WILLIAM EARLY, PLAINTIFF IN ERROR, v. JOHN DOE, ON THE
DEMISE OF RHODA E. HOMANS.

Where the language of the statute was "That public notice of the time and place of
the sale of real property for taxes due to the corporation of the city of Wash-
ington shall be given by advertisement inserted in some newspaper published in
said city, once in each week for at least twelve successive weeks," it must be adver-
tised for twelve full weeks, or eighty four days.
Therefore, where property was sold after being advertised for only eighty-two days,
the sale was illegal, and conveyed no title.

THIS case came up by writ of error from the Circuit Court of
the United States for the District of Columbia, holden in and
for the county of Washington.

It was an ejectment brought by Rhoda E. Homans, to recover
that part of lot number four, in square number seven hundred
and thirty, in the city of Washington; beginning for the same
at a point on the line of A street south, at the distance of thirty-
two feet from the north-east corner of said square; and running
thence due west with the line of said street, fifty feet and five
inches; thence due south, fifty feet; thence due east, fifty feet
and five inches; thence fifty feet to the place of beginning; and
also into three messuages or tenements with the appurtenances
situated thereon, in the county above named.

Upon the trial, the plaintiff showed title in herself, and the
defendant made title under a tax sale, when the jury, under the
instructions of the court, found a verdict for the plaintiff. The
following bill of exceptions explains the case.

### Defendant's bill of exceptions.

At the trial of the above cause, after the plaintiff's lessor had
shown a legal title in herself, a devisee of D. Homans, who died
in August, 1850, to the fifty feet five inches of ground fronting
on A street by fifty feet deep, a part of lot 4, in square No. 730,
in Washington city, with the houses thereon, being the premises
described in the declaration; entitling her, as admitted *primâ
facie*, to recover the same as such devisee, and that the de-
fendant held possession thereof at the commencement of this ac-
tion. The defendant thereupon, to maintain the issue on his
part, offered evidence of a tax title from the corporation of the
city of Washington, to sustain which, and to show that the re-
quirements of the act of 26th May, 1824, had been complied
with, proved the notice of the time and place of the tax sale to

Early v. Doe.

have been given by the city collector, by advertisement in the National Intelligencer, in the following words:—

COLLECTOR'S OFFICE, CITY HALL,
*August 25th,* 1848.

" On Wednesday, the 15th day of November next, the annexed list of property will be sold by public auction, at the City Hall in the City *Hall in the city* of Washington, to satisfy the corporation of said city for taxes due thereon as stated, unless the said taxes be previously paid to the collector, with such expenses and fees as may have accrued at the time of payment." And amongst other property so advertised was the following:

| No. of Sqr. | No. of Lot. | Assessed to. | Taxes. | Total. |
|---|---|---|---|---|
| 730. | Pt. 4, fronting 50 ft. 5 in., and improvement on A street, and 50 ft. deep, lying next to the eastern 32 ft. of said lot. | Daniel Homans. | 1845. 1846. 1847. 9.94, 9.94, 9.94. | $29.82 |

And the insertion of said advertisement was on the following days:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Saturday, | 26th | Aug., | 1848. | Saturday, | 14th | Oct., | 1848. |
| " | 2d | Sept., | " | " | 21st | " | " |
| " | 9th | " | " | " | 28th | " | " |
| Thursday, | 14th | " | " | " | 4th | Nov. | " |
| " | 21st | " | " | " | 11th | " | " |
| Saturday, | 30th | " | " | Wednesday | 15th | " | " |
| " | 7th | Oct., | " | | | | |

And that on such last day above mentioned, the said sale took place and the defendant became the purchaser of said premises for $55. Whereupon the plaintiff prayed the opinion and instruction of the court to the jury, " that the said sale was invalid and of no effect, and passed no title to the defendant in the premises in question; because a period of twelve full and complete weeks had not intervened between the 26th August, the time of the first advertised notice of said sale, and the 15th November, 1848, the day or time of said sale, but a period of eleven weeks and four days only;" which opinion and direction the court gave as prayed for by the plaintiff, to which opinion and direction of the court to the jury, the defendant by his counsel, prayed leave to except, and that the court would sign and seal these his bill of exceptions, according to the form

of the statute in such cases made and provided, which is accordingly done this 17th day of May, 1853.

Jas. S. Morsell, [seal.]<br>
Jas. Dunlop,   [seal.]

Test: Jno. A. Smith, *Clerk.*

Upon this exception the case came up to this court and was argued by *Mr. Lawrence,* for the plaintiff in error, and by *Mr. Redin* and *Mr. Woodward,* for the defendant in error.

*Mr. Lawrence.*

The only question in this case is, whether the words of the act of 26th May, (4 Stat. at Large, 75,) "inserted in some newspaper published in said city, once in each week for at least twelve successive weeks," are to be understood as requiring the full period of eighty-four days between the first and last advertisement, or as requiring an insertion once in each of twelve successive weeks.

A week is a definite period of time, beginning on Sunday and ending on Saturday, (4 Pet. 361); and insertions of notice on Monday and the Saturday week following, were held to fulfil the requirement of "one in each week," although thirteen days intervened between the two.

It is maintained, for the plaintiff in error, that if there are twelve insertions of the notice in any part of each of twelve successive weeks, that is sufficient.

The counsel for the defendant in error contended that the notice was insufficient.

The last charter of the city of the 17th May, 1848, makes no change in the period of notice and the manner of giving it; they are still regulated by the act of 26th May, 1824.

The words of the second section of that act are, "that public notice of the time and place of the sale of all real property for taxes due the corporation of the city of Washington, shall be given in all cases hereafter by advertisement, inserted in some newspaper, published in said city, once in each week, for at least twelve successive weeks; in which advertisement shall be stated the number of the lot," &c.

The facts. The first insertion was on Saturday, the 26th August, 1848; the last, on Wednesday, the 15th November, the day of the sale, being a period of eighty-two days only, including both days, namely, the day on which the notice first appeared, and the day of sale.

The eleventh week ended, either on Friday, the 10th of November, or on Saturday, the 11th, according as the week is made to commence on the day on which the notice first appears, or on the first succeeding Sunday thereafter. The twelfth week

could not expire until Friday the 17th, or Saturday the 18th November, and the earliest day on which the sale could have been made was one of those days. It was made on the previous Wednesday, the 15th November, before the twelve weeks had expired.

By the charter of 1812, it was directed that the notice should "be given, by advertising, at least six months, where the property belongs to persons residing out of the United States; three months, where it belongs to persons residing in the United States, but out of the District of Columbia; and six weeks, where it belongs to persons residing within the district."

The charter of 1820, superadded to the period of notice, the further requisition of weekly insertions of the advertisement, "once a week, for at least six months, three months, or six weeks," according to the residence of the owner. Section 12.

The act of 1824 changed the period of notice from months to weeks, but retained the further requirement of weekly insertions, "once in each week, for at least twelve successive weeks."

There are, then, two requirements, as to notice, by the act of 1824: 1st, twelve weeks notice; and, 2d, the insertion of the advertisement once in each of those twelve weeks.

The full period of twelve weeks' notice must be given. In Ronkendorff v. Taylor, 4 Peters, 361, the court say: "A week is a definite period of time, commencing on Sunday, and ending on Saturday;" and, being thus composed of seven days, twelve weeks cannot consist of less than eighty-four days. And that case sanctions the idea, that the whole period of twelve weeks should elapse before the sale. Whether the week be made to commence on the day on which the notice is first published, and to end on the seventh day thereafter; or to begin on the Sunday following the first day of the notice, and end on the succeeding Saturday, is immaterial in this case; the result — not twelve weeks' notice — is the same on either mode of computation. The first insertion was on Saturday, the 26th August. If the week commenced on that day and ended on the following Friday, there are but eighty-two days, including both day of notice and day of sale. If it began on Sunday, the 27th, and ended on the succeeding Saturday, there would be but eighty-one days, including both. And, if the true rule be to include the day on which the notice first appears, and to exclude the day of sale, there would still be but the same eighty-one days; — eleven weeks and four days.

The expression in the act of 1824 is: "once in each week, for at least twelve successive weeks," not merely once in each week, but once in each week "for" twelve weeks during or through that certain space of time; and not merely for twelve

weeks, but for "at least" twelve successive weeks, not less than that whole period.

The notice, according to Ronkendorff *v.* Taylor, may be inserted on any day in each of those twelve weeks, on the last day of the eleventh week and the first day of the twelfth week. But that rule was not meant, as the corporation officers seem to have supposed, to authorize the collector to abridge the period of notice; to insert one advertisement in each of the first eleven weeks and a twelfth on the fourth day after the end of the eleventh week, and to sell on that day and before the twelfth week had fully expired. The corporation by-law followed the words of the act of Congress. The collector has no dispensing power.

All the analogies require the full term. As the familiar instance of six months' notice to quit or four months' notice of publication against non-residents under our acts of assembly: four or six whole months, less will not do. In all judicial sales, either by sheriff or trustee, the period of notice is usually prescribed, and the full term must be given. And as to these tax sales. The fourth point in Pratt and the Corporation, 8 Wheat. 681, as seen in the record, was whether sufficient notice had been given. After the first insertion of the advertisement, the amount of the taxes was changed without any change in the day of sale, so that the full period of notice was not given after such change. The sale was adjudged bad.

So in Pope & Hamner *v.* Headen, 5 Ala. R. 433. The law required "ninety days' notice" of the sale, to be published in some newspaper. The advertisement was dated the 1st of November, 1839, and was then handed to the publisher of the newspaper, was inserted therein weekly from the 6th of November, which was the first day of publication, until the 29th of January, 1840, and the sale took place on the 3d of February, 1840. Between the date of the advertisement and the day of sale there were more than ninety days; but between the first day of the publication and the day of sale there were but eighty-nine days, excluding, as the court did there, the first, and including the last day. The date of the advertisement and the handing of it to the publisher within time were considered by the court; but the sale was held to be clearly void.

In our case, counting from the date of the advertisement, the 25th of August instead of the 26th, the day of its publication, and even including the day of its date, and also the day of sale, there are not eighty-four days, but eighty-three only.

See also Lyon et al. *v.* Hunt et al. 11 Ala. R. 295, for a fu.. collection of the cases.

It is not enough to give twelve or more insertions of the ad-

Early v. Doe.

vertisement. It may be continued twice or thrice a week, or even daily. In the early charters the corporation began simply with the period of notice: six weeks, three months, six months. Weekly insertions were first superadded by the charter of 1820, and have been continued by the act of 1824. But the law is not satisfied by a compliance with that requisite merely. Each requirement of the law must be observed. Here both, namely, "twelve weeks at least," and weekly insertions, are essential to the validity of the sale. The non-observance of either destroys it, as much so as the omission of both.

Neither of these requirements can, as to the other, be deemed the primary requisite. If either could be so considered, it would be the period of notice rather than the number of insertions.

It is purely a matter of positive law. The rules are arbitrary; eleven weeks and four days might have answered just as well as twelve weeks; but the statute says twelve weeks, meaning twelve full or whole weeks. The language is clear and express; there is no room for construction or discretion. In 8 Wheat. 687, Judge Johnson asks: "what have we to do with such inquiries in cases of positive enactment?"

The act means that notice of the sale shall be given by publication for at least twelve weeks prior to the day of sale, which notice shall also be published once in each of those twelve weeks. The object in naming the period of notice was to give the owner time for paying the taxes; and, in requiring weekly insertions, to afford him a better opportunity of seeing the advertisement of sale.

These sales are nowhere regarded with favor, but are everywhere tested by the strictest rules. They are penal, lead to forfeiture of estate, and whatever is prescribed to give them validity must, and ought to be, observed, and has always been required. 4 Wheat. 77; 6 Wheat. 119; 6 Peters, 328; 9 How. 248.

It is idle for the officer or collector of the corporation to be speculating and refining in this way. Why not give the legal notice? Where is the inconvenience in giving three- or four days' more notice, or waiting a few days longer for the taxes? They will not be lost by the avoidance of the sale. The corporation has the power to re-assess the taxes on the same property. Act of 1824, §. 3.

Mr. Justice WAYNE delivered the opinion of the court.

This is an ejectment suit for part of lot No. 4, in square, No. 730, in the city of Washington.

The only question raised by counsel in the argument of the case here, is, whether, where property has been assessed for taxes, it can be considered as having been regularly advertised

and regularly sold, if it shall be sold before twelve full weeks (or eighty-four days) have passed from the date of the first advertisement. Eighty-four days advertisement were not given when the property in dispute in this case was sold. Upon the trial in the Circuit Court, the plaintiff in that court prayed its instruction to the jury in these words: "That the said sale was invalid and of no effect, and passed no title to the defendant in the premises in question; because a period of twelve full weeks had not intervened between the 26th of August, the time of the first advertised notice of sale, and the 15th of November, 1848, the day or time of sale, but a period of eleven weeks and four days only." The court gave the instruction accordingly. The defendant's counsel excepted to the same. The court, upon his prayer, allowed it, and the case is regularly here by writ of error.

It appears that the notice for sale of the property in dispute was inserted in the National Intelligencer twelve times in successive weeks, the first insertion being on Saturday, the 26th of August, and the last on the 15th of November, the day of sale. Including the 26th of August as one of the days of the notice, and the 15th of November necessarily as another, we find that the notice was given only for eighty-two days. The language of the statute regulating the notice to be given is in these words: "That public notice of the time and place of the sale of all real property for taxes due the corporation of the city of Washington, shall be given hereafter, by advertisement, inserted in some newspaper published in said city, once in each week, for at least twelve successive weeks." Now, the first week following the date of the advertisement expired with the next Friday, the tenth of November, and, if the computation is carried out, it will be found that the twelfth week expired on the 17th of November. But the sale was made two days before, on the 15th of November, the last insertion of the notice being on the day of sale.

So there were eleven insertions of the notice in the newspaper in different weeks (making, with the first, twelve) after the expiration of the week from the first insertion, and the point to be settled is, whether the statute means that twelve insertions in successive weeks is sufficient notice, without respect to the number of days in twelve weeks. We do not doubt if the statute had been "once in each week for twelve successive weeks," a previous notice of the particular day of sale having been given to the owner of the property, that it might very well be concluded, that twelve notices in different successive weeks, though the last insertion of the notice for sale was on the day of sale, was sufficient. But when the legislator has used the words, for at least twelve successive weeks, we cannot doubt that the

words, at least as they would do in common parlance, mean a duration of the time that there is in twelve successive weeks or eighty-four days. Every statute must be construed from the words in it, and that construction is to be preferred which gives to all of them an operative meaning. Our construction of the statute under review gives to every word its meaning. The other leaves out of consideration the words " for at least," which mean a space of time comprehended within twelve successive weeks or eighty-four days. The preposition, for, means of itself duration when it is put in connection with time, and as all of us use it in that way, in our every-day conversation, it cannot be presumed that the legislator, in making this statute, did not mean to use it in the same way. Twelve successive weeks is as definite a designation of time, according to our division of it, as can be made. When we say that any thing may be done in twelve weeks, or that it shall not be done for twelve weeks, after the happening of a fact which is to precede it, we mean that it may be done in twelve weeks or eighty-four days, or, as the case may be, that it shall not be done before. The notice for sale, in this instance, was the fact which was to precede the time for sale, and that is neither qualified nor in any way lessened by the words " once a week," which precede in this statute those which follow them, " for at least twelve successive weeks." We think that the court did not err in refusing to give to the jury the instruction which was asked by the defendant upon the trial of this case.

The construction of the statute will be recognized to be in harmony with that policy of the law which experience has established to protect the ownerships of property from divestiture by statutory sales, where there has not been a substantial compliance with the law, by which a public officer is empowered to sell it.

Property is liable to be sold on account of an undischarged obligation of the owner of it to the public or to his creditors. But it can only be done in either case where there has been a substantial compliance with the prerequisites of the sale, as those are fixed by law. Any assumption by the officer appointed to make the sale, or disregard of them, the law discountenances. He may not do any thing of himself, and must do all as he is directed by the law under which he acts. He may not, by any misconstruction of it, anticipate the time for sale within which the owner of the property may prevent a sale of it, by paying the demand against him, and the expenses which may have been incurred from his not having done so before. This the law always presumes that the owner may do, until a sale has been made. He may arrest the uplifted hammer of

the auctioneer when the cry for sale is made, if it be done before a *bonâ fide* bid has been made. The authority of the officer to sell is, as it was in this case, "unless the taxes be previously paid to the collector, with such expenses as may have accrued at the time of payment." There is a difference, it is true, in the strictness required in a tax sale, and that of a sale made under judgment and execution, but in both, the same rule applies as to the full notice of time which the law requires to be given for the sale. " In deciding upon tax land titles great strictness has always been observed. The collector's proceedings are closely scanned. The purchaser is bound to inquire whether he has done so or not. He buys at his peril, and cannot sustain his title without showing the authority of the collector and the regularity of his proceedings."

This court said, in Williams *v.* Peyton, 4 Wheat. 77, that the authority given to a collector to sell land for the non-payment of the direct tax, "is a naked power not coupled with an interest." In all such cases the law requires that every prerequisite to the exercise of that power must precede its exercise, that the agent must pursue the power or his act will not be sustained by it. Again, in Ronkendorff's Case, 4 Peters, 349, this court repeated that in an *ex parte* proceeding, as a sale of lands for taxes, under a special authority, great strictness is required. An individual cannot be divested of his property against his consent, until every substantial requisite of the law has been complied with. The proof of the regularity of the collector's proceedings devolves upon the person who claims under the collector's sale. At an earlier day, the court decided, in Stead's Executors *v.* Course, 4 Cranch, 403: A collector selling lands for taxes, must act in conformity with the law from which his power is derived; and the purchaser is bound to inquire whether he has so acted. It is incumbent upon the vendee to prove the authority to sell. See also McClung *v.* Ross, 5 Wheaton, 116; Thatcher *v.* Powell, 6 Wheaton, 119. The decisions made by this court are full as to the circumstances under which tax titles may be set aside. We recommend also the perusal of the case of Lyon et al. *v.* Burt et al., in 11 Alabama Reports, cited by the counsel for the defendant in error; and to all of the cases cited in the opinion of Chief Justice Collier. It is not necessary for us to extend this opinion farther in citing cases upon tax sales. So far as we know, the law upon the subject is the same throughout the United States, and where differences exist they have occurred from a different phraseology in statutes, and not from any discordance in the views of judges in respect to the common law to be applied in tax sales.

See 4 Cranch, 403; 9 Cranch, 64; 1 Scam. 335; 1 Bibb, 295;

5 Mass. Rep. 403; 4 Dec. & Bal. 363; 3 Ohio Reports, 232; 2 Ohio, 378; 3 Yeates, 284; 2 Yeates, 100; 13 Sergeant & Rawle, 208; 4 Dec. & Bal. 386; 5 Wheat. 116; 6 Wheat. 119; 1 Yeates, 300; 3 Monroe, 271; 1 Tyler's Rep. 295; 14 Mass. 177; 8 Wheaton, 681; 15 Mass. 144; Greenleaf's Rep. 339; Taylor's North Carolina Rep. 480; 3 Hawks's Rep. 283; 1 Gilm. 26; 10 Wend. 346; 18 Johns. Rep. 441; 5 Alabama, 433. I have not the reports of the Supreme Court of Georgia at hand to cite from them any cases of tax sales, if any have been decided by it, but I know that the decisions of the courts in that State are the same as those stated in this opinion and in the cases cited.

We affirm the judgment of the Circuit Court.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof it is now here ordered and adjudged by this court that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed, with costs.