CASE No. 1030.

COOKE v. PENNINGTON.

1.  Where the two plaintiffs alleged that they were executors of the mortgagee, and the answer did not properly deny this allegation, and the original letters testamentary of one executor were put in evidence by consent, and a certified copy of the letters of the other executor were introduced without objection, the court will not consider the objection made at a late stage of the case, that there was no proof of the plaintiffs' capacity to sue.

2.  Where action to foreclose a mortgage is brought after default in the payment of interest due, but before the principal debt is payable, and such principal debt becomes due before decree rendered, the judgment should be for the whole amount of debt and interest.

3.  He who claims title under a tax deed must prove his title.

4.  The recitals in a tax deed for five hundred and eighty-six acres, stated that the land had been sold two days before the time advertised for sale, and that only one acre was bid in by the purchaser. *Held*, that the deed which was *prima facie* but not conclusive evidence of good title, showed on its face that there had been no valid sale or transfer of title.

5.  One made a party defendant to an action for foreclosure, as a claimant of the land under tax titles, cannot be required to account for the rents and profits while he was in possession of the mortgaged premises, the complaint making no such demand.

6.  This court refused to disturb the order of the court below as to the costs of this action on Circuit and former appeals—costs in an equity case being largely in the discretion of the Circuit judge.

Before MACKEY, J., Richland, November, 1879.

To the case as stated in the opinion, it will be necessary to add very little. The complaint alleged the death of the mortgagee, that he had left a will appointing the plaintiffs executors, and that they had duly qualified, &c. Neither the will nor any copy of it was offered in evidence, and the only evidence submitted of its existence and proof, is that contained in the recitals in the letters testamentary.

The tax deed is as follows:

State of South Carolina, Richland county. Whereas, by the provisions of Section 17, Chapter XIII., Title III., General Statutes of the said state, the county auditor of each county in the said state is authorized and required, annually, to cause the list of delinquent lands in his county to be published weekly for two weeks in one newspaper in his county, and to which list there shall be attached a notice in the following form, to wit: Notice is hereby given that the whole of the several parcels, lots and parts of lots of real estate, described in the preceding list, or so much thereof as will be necessary to pay the taxes, penalties and assessments charged thereon, will be sold by the treasurer of Richland county, South Carolina, at his office in said county, on the 7th day of May, A. D. 1873, unless said taxes, assessments and penalties be paid before that time; and said sale will be continued from day to day until all of said parcels, lots and parts of lots of real estate shall be sold or offered for sale.

And whereas, there appeared on the tax duplicates of Richland county, for 1872, lot, buildings, five hundred and eighty-six acres of land, valued at $1500, assessed in the name of John M. Pennington, the tax, cost and penalties on the same being $34.29. And whereas, the above John M. Pennington neglected to pay to C. H. Baldwin, treasurer of Richland county, the above tax, cost and penalties as prescribed by law, and in accordance with an act of the general assembly, "providing for the extension of time for the payment and collection of taxes for the fiscal year commencing November 1st, 1872, approved January 16th, 1873," the above real estate was duly advertised as delin-

quent, in the Daily Union and Herald, to be sold as above required.

And whereas, at the aforesaid sale, so held by C. H. Baldwin, treasurer of Richland county, on May 5th, 1873, one William Price promised to and did pay to said C. H. Baldwin, county treasurer, the sum of $34.29, being the tax, cost and penalties on the above-described property, and assessed in the name of the said John M. Pennington, for the least quantity bid by any person then and there present, viz., one acre, and to whom a delinquent land certificate was issued, specifying the above fact.

And whereas, in accordance with an act of the general assembly entitled "An act to amend an act entitled 'An act providing for the assessment and taxation of property,'" passed September 16th, 1868, and all acts amendatory thereto, approved March 12th, 1872, it is the duty of the county auditor to make and deliver to any purchaser, his heirs or assigns, a deed of conveyance for real estate so sold, and not redeemed in accordance with law by the party in whose name it was assessed, or any other person interested therein, within ninety days from date of said sale, on payment of the legal fee and surrender of the aforementioned delinquent land certificate.

And whereas, the real estate so sold as aforesaid has not been redeemed within the time and in the manner so as aforesaid prescribed by law. Now, therefore, I, A. L. Solomon, county auditor of the county of Richland, in the state aforesaid, in consideration of the premises, and in further consideration of the sum of $2, good and lawful money of the United States, to me in hand paid by the said William Price, for and in behalf of the State of South Carolina, have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release unto the said William Price, all that certain lot, tract or parcel of land, bounded and described as follows, to wit: Five hundred and eighty-five acres in Lower township; all the plantation or four several tracts of land, viz., tract "G," containing one hundred acres; tract "H," containing one hundred and fifty acres; "I," containing three hundred acres; and "K," containing thirty-six acres. Four said tracts contain, in the whole, five hundred and eighty-six acres, more or less, as is more fully described in a

plat made thereof in April and May, A. D. 1843, by John N. Barrillon, deputy surveyor, to which reference is hereby made, and to be taken as part of these presents; said land being bounded on the north by lands of William Braddy, formerly owned by Moses Braddy, south by the Congaree river, east by the New Congaree river and the Old Congaree river, separating it from Butler's island, and on the west by the Congaree river. The same being situate and lying in the county of Richland, in the state aforesaid.

Together with all and singular the rights, members, hereditaments and appurtenances to the said premises belonging or in any wise incident or appertaining.

To have and to hold all and singular the premises before mentioned unto the said William Price, his heirs and assigns forever.

And I, A. L. Solomon, county auditor as aforesaid, do hereby bind the State of South Carolina to warrant and forever defend all and singular the said premises unto the said William Price, his heirs and assigns, against the said State of South Carolina, and against every person and all persons whomsoever, lawfully claiming or to claim the same or any part thereof.

Witness my hand and the seal of the state, August 23d, in the year of our Lord 1873, and in the ninety-seventh year of the independence of the United States of America.

A. L. SOLOMON,<br>
*A. R. C.*

T. H. BLACKWELL.
E. J. TERRY.

This deed was duly probated and recorded.
Judgment for plaintiffs.    Defendants appealed.

*Mr. J. E. Bacon,* for appellants.

*Messrs. Baxter & Seibles,* contra.

April 18th, 1881.    The opinion of the court was delivered by McGOWAN, A. J.    This was an action by Thompson H. Cooke, executor, and Jane M. Zeigler, executrix of Daniel

Zeïgler, deceased, against John M. Pennington and William Price, for foreclosure of a mortgage of real estate, given by John M. Pennington to the testator and to the said Jane M. Zeigler, bearing date February 26th, 1872. Price was made a defendant, on the ground that he claimed to have purchased the land at a sale for taxes in May, 1873, and was in possession. The case has been to this court twice before upon preliminary questions as to the effect of admissions and the manner of taking the testimony, &c. 7 *S. C.* 385 ; 9 *S. C.* 83.

After the case was remanded the last time it was heard by Judge Mackey, who overruled the defences ; held that the alleged tax title set up by the defendant, Price, was absolutely null and void, and that he should account for rents and profits, pay costs, &c., and decreed against the defendant, Pennington, foreclosure and sale of the premises towards satisfaction of the debt, $2385.53.

The defendants appeal to this court. The exceptions are long and numerous, and will not be considered *seriatim,* but according to subject matter.

1. It is urged that the plaintiffs had not legal capacity to sue, neither the will of Daniel Zeigler nor the qualification of the executors having been proved. It appears in the case that the attorney for the defendants consented that the original letters testamentary of Jane M. Zeigler, as executrix of the will of Daniel Zeigler, deceased, issued by the judge of probate for Orangeburg county, August 12th, 1872, might be regarded as in evidence. It also appears that a certified copy of the letters testamentary of Thompson H. Cooke, as executor of the will of Daniel Zeigler, was offered in evidence without objection at the time. These correspond, in all respects, except that one stated that the will was proved at Orangeburg, August 12th, 1872, and the other August 12th, 1873. This was manifestly a clerical mistake. The answer of defendants did not deny, in terms, that the plaintiffs were, as they claimed to be, executors, but stated that they " knew nothing of the will or the appointment and qualification of the plaintiffs as executors thereof." That was not such a denial as the code requires of " each material allegation controverted by the defendant." Besides, this litigation has

been going on for years, and this objection, so far as we can see, is now made for the first time.

2. The objection is made that no right of action had accrued to the plaintiffs at the date of the summons and complaint; that at that time they had no right to elect the whole mortgage debt to be due, and sue for and recover the same. The bonds were due and payable January 1st, 1876, with interest from January 1st, 1872, "to be paid annually." The interest for the year 1872 had been paid, but the interest for the year 1873, $105, was in arrear on January 23d, 1874, when the complaint was filed, which prays judgment for the whole debt, as follows: "That as more than twenty days has elapsed since said interest became due and payable, the plaintiffs elect the whole principal sum to be immediately due and payable," and demand judgment for the whole principal and interest. When the final decree of foreclosure was rendered, April 15th, 1880, both bonds were past due, and the judge rendered his decree for the whole amount of principal and interest. Was that error?

Usually the terms of the mortgage itself determine when the right to foreclosure accrues. No copy of this mortgage is in the case; but assuming that it was in the usual form, failure to pay a year's interest, which was payable annually, was a default upon which a right to foreclose, at least for the year's interest in arrear, accrued, and all the bonds being due at the time of the final hearing, it was not error to give judgment for the whole then due. "When a mortgage or trust deed authorizes a sale to be made upon the happening of any default, a failure to pay interest when due is a default within the meaning of the deed, although this does not show when the interest is payable, or what the rate of it is, except by reference to the note secured.  *  *  *  Unless so provided, the foreclosure can extend no further than to enforce satisfaction of such part of the debt as is due at that time, and for that purpose to sell as much of the mortgaged property as may be necessary. Courts of Equity, without the aid of any statutory provision to that effect, may generally retain jurisdiction of the case until the subsequent installments become due and then decree a further sale; and, under the general doctrine and practice of equity, may direct a sale of the whole mort-

gaged estate.    *    *    *    If other installments become due after the suit is commenced and before final hearing, these may be included in the decree without filing a supplemental bill if they are set out in the original bill and are included in the prayer for decree."    2 *Jones on Mort.,* §§ 1174, 1181 ; *Magruder* v. *Eggleston,* 41 *Miss.* 284.

3. The defendant, Price, set up what purported to be a tax deed of the mortgaged premises; " as a complete bar to the plaintiff's claim."    A copy is in the case.    From the deed itself and its recitals, the Circuit judge finds, among others, the following facts, which, from a careful inspection of the paper, we think are well sustained.

8. " That if said list was free from the defects mentioned, the ' notice ' attached thereto declared that the land therein described would be sold on May 7th, 1873, whereas the only proof before the court shows, and the court so finds, that the alleged sale, under which the defendant, William Price, claims, was held on the *fifth day of May,* 1873.

9. " That at said alleged sale only *one acre of land* was bid off by and knocked down to the defendant, the said William Price.

10. " That a certificate *for said acre* of land was issued by A. L. Solomon, auditor of Richland county, to said defendant.

11. " That on August 23d, 1873, the said William Price surrendered his certificate to said A. L. Solomon, auditor of Richland county, and applied for a deed of the real estate alleged to have been sold as aforesaid.

12. " That thereupon, to wit, on the said August 23d, 1873, the said A. L. Solomon, auditor of Richland county, signed and delivered to the said defendant an instrument purporting to grant, bargain, sell and release unto him, with the usual covenants of warranty, a tract of land therein described, as follows, to wit: ' *Four said tracts, embracing in the whole five hundred and eighty-six acres.*'    And that said instrument was duly made, signed and delivered by said Solomon, county auditor as aforesaid, but that he omitted *to seal* the same."

From these and other defects, apparent on the face of the deed, the judge held, as matter of law, that the alleged sale by C. H. Baldwin, treasurer of Richland county, on May 5th, 1873, was

not a delinquent land sale, and was illegal and void. It is charged that this was error, principally upon the terms of Section 116 of the act of 1874, (15 *Stat.* 773), which declares that "the deed so made by the county auditor for any real estate sold at delinquent land sale, shall be *prima facie* evidence of a good title in the grantee," &c. It is insisted that this changed the rule of evidence and thereby shifted the *onus* upon the plaintiffs to show irregularity in some of the proceedings anterior to the sale; that it was incumbent on the plaintiffs to prove something *dehors* the deed in order to defeat it. The general rule, certainly, is that he who claims title must prove it. This is, for many reasons, especially true as to tax titles. "The party claiming under this power [to sell land for taxes] is chargeable with notice of every irregularity in the proceedings of the officers. He purchases at his peril, the maxim *caveat emptor* being rigidly applied to him. The reasons are obvious. The law imputes to every purchaser knowledge of all facts appearing at the time of his purchase upon the muniments of title, which it was necessary for him to inspect in order to ascertain the sufficiency of it. More especially is this doctrine applicable to the purchaser at a tax sale. For, knowing the land to have been sold under color of an authority given by law to a public officer, who is not the proprietor thereof, he is bound to inquire and take notice whether that officer, and all others whose agency is required by the law in the conduct of the proceedings, *have proceeded with regularity in the discharge of their duty.*" *Blackwell* 66.

The provision in the act of 1874 means no more than what it says, that the deed shall be *prima facie* evidence of good title; that is, good until the contrary appears, and we know of no reason why the contrary may not be made to appear by recitals in the deed itself as well as from other proof. The deed must be of land "*sold at delinquent land sale.*" The fact that it was so sold cannot be assumed from the existence of the deed itself, but must appear before the law can apply or the party have the benefit of the presumption. It would be intolerable if a bare deed, purporting to be given by an auditor, conveying the land of one man to another, could not be shown, by its own terms, to

have no connection *with a delinquent land sale*, but, on the contrary, to have been executed without proper authority.

The courts have given strict construction to laws of the character of the provision in our act of 1874, and have not extended their operation beyond the very words of the statute. In Illinois an act declared that the deed should " vest a perfect title in the purchaser unless the land should be redeemed according to law or the former owner shall show that the taxes for which it was sold had been actually paid according to law, or that the land was not legally subject to taxation." The Supreme Court of that state, in giving construction to this statute in the case of *Garrett* v. *Wiggins*, 1 *Scam*. 335, "deny that the statute will, by any fair construction, warrant the opinion that the auditor, selling land without authority, could, by his conveyance, transfer the title of the rightful owner. They say that to consummate his authority the law imperatively requires him to publish notice of the time and place of sale; that the publication of this notice is not one of the facts which can be inferred from his conveyance, and, without proof of the fact, the auditor's deed is not evidence of the regularity and legality of the sale, and, consequently, conveyed no title to the purchaser." *Blackwell* 88.

Without going into the various defects found in this alleged tax sale, it is enough to state that the deed itself contains evidence that the *notice* of sale was for the *seventh*, and the actual sale was on *the fifth of May*, 1873. Speaking of the power of the officer appointed by law to make the sale, the Supreme Court of the United States say: " He may not do anything of himself, and must do all as he is directed by the law under which he acts. He may not, by any misconstruction of it, anticipate the time for sale, within which the owner of the property may prevent a sale of it by paying the demand against him and the expenses which may have been incurred from his not having done so before. This the law always presumes that the owner may do until a sale has been made. He may arrest the uplifted hammer of the auctioneer when the cry for sale is made, if it be done before a *bona fide* bid has been made." *Early* v. *Doe*, 16 *How.* (*U. S.*) 610.

At the sale Price purchased *one acre* and paid the taxes, costs

N

and penalties, $34.29, and received his certificate as purchaser of *one acre,* but on August 23d, 1873, he surrendered his certificate and received title, not for the one acre but for the whole lands, · "five hundred and eighty-six acres, more or less." There is no evidence whatever that any of this land, except the *one acre,* was ever sold at all at delinquent land sales or any other, or offered for sale after the *one* acre was sold. It would be a reproach to the administration of justice if a deed, executed under these circumstances, should be held to prove itself conclusively, and to transfer the title of one man's property to another.

The complaint did not ask an account for rents and profits, and although the defendant, Price, according to the view taken, was a mere trespasser, we think he cannot be held to account for rents and profits in this proceeding.

In equity suits costs are largely in the discretion of the court. One-half the costs and expenses of the action was directed to be paid out of the proceeds of sale. In the exercise of the discretion vested in him, the Circuit judge directed Price to pay the other half, and we cannot say that this was error.

So far as the decree orders an account for rents and profits, it is reversed, and in all other respects it is affirmed and the appeal dismissed.

SIMPSON, C. J., and McIVER, A. J., concurred.