802 S.E.2d 635

**WACHESAW PLANTATION EAST COMMUNITY SERVICES ASSOCIATION, INC., Respondent,**

v.

**Todd C. ALEXANDER, Appellant.**

Appellate Case No. 2011-198986
Opinion No. Op. 5494
Court of Appeals of South Carolina.
Heard May 11, 2017
Filed June 28, 2017

254

Charles T. Smith, of Georgetown, for Appellant.

Stephanie Carol Trotter, of McCabe, Trotter & Beverly, P.C., of Columbia, for Respondent Wachesaw Plantation East Community Services Association, Inc.

Jack M. Scoville, Jr., of Jack M. Scoville, Jr., P.A., of Georgetown, for Respondent William George.

GEATHERS, J.:

In this lien foreclosure action filed by Respondent Wachesaw Plantation East Community Services Association, Inc. (the Association), Appellant Todd C. Alexander (Homeowner) seeks review of an order of the Master-in-Equity denying his motion to vacate the judicial sale of his property. Homeowner argues (1) the master erred in denying the motion to vacate because the sale price was inadequate and was accompanied by other circumstances warranting the interference of the court, namely, Homeowner's health problems and his lack of prior knowledge of the judicial sale; (2) the sale constituted a forfeiture of Homeowner's property because the sale was involuntary and resulted in a price that was $135,000 less than the property's tax valuation; (3) the third-party bidder, Respondent William George (Bidder), was unjustly enriched because Homeowner was unable to attend the sale; and (4) Homeowner had an equitable right to redeem his property up to the time Bidder complied with the bid and received the deed to the property. We affirm.

## I.   Circumstances Warranting Interference

■ Homeowner first argues that the inadequacy of the sale price combined with his health problems and his lack of prior knowledge of the sale warranted setting it aside. We disagree.

■ "[T]he determination of whether a judicial sale should be set aside is a matter left to the sound discretion of the trial court." *Wells Fargo Bank, NA v. Turner*, 378 S.C. 147, 150, 662 S.E.2d 424, 425 (Ct. App. 2008). "An abuse of discretion occurs when the judgment is controlled by some error of law or when the order, based upon factual, as distinguished from legal conclusions, is without evidentiary support." *Regions Bank v. Owens*, 402 S.C. 642, 647, 741 S.E.2d 51, 54 (Ct. App. 2013). This standard of review "merely

represents the appellate courts' effort to incorporate the two sound principles underlying the proper review of an equity case." [1] *Crossland v. Crossland*, 408 S.C. 443, 452, 759 S.E.2d 419, 423–24 (2014) (quoting *Lewis v. Lewis*, 392 S.C. 381, 391, 709 S.E.2d 650, 655 (2011)). "[T]hose two principles are the superior position of the trial [court] to determine credibility and the imposition of a burden on an appellant to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court." *Id.* at 452, 759 S.E.2d at 424 (first alteration in original) (quoting *Lewis*, 392 S.C. at 391, 709 S.E.2d at 655).

■ "Our courts zealously insure judicial sales be openly and freely conducted and nothing be allowed to chill the bidding." *E. Sav. Bank, FSB v. Sanders*, 373 S.C. 349, 355, 644 S.E.2d 802, 805–06 (Ct. App. 2007). However, "[a] judicial sale will be set aside when either: (1) the sale price 'is so gross as to shock the conscience[;]' or (2) the sale 'is accompanied by other circumstances warranting the interference of the court.'" *Wells Fargo*, 378 S.C. at 150, 662 S.E.2d at 425 (second alteration in original) (quoting *Poole v. Jefferson Standard Life Ins. Co.*, 174 S.C. 150, 157, 177 S.E. 24, 27 (1934)).

As has been said time and again in cases involving the setting aside of judicial sales, it is the policy of the [c]ourts to uphold such sales when regularly made, and when it can be done without violating principle or doing injustice; and that mere inadequacy of price, unaccompanied by other circumstances [that] would invoke the exercise of the [c]ourt's discretion is not sufficient, unless, perhaps, it is so great as to raise a presumption of fraud or to shock the conscience of the [c]ourt.

*Henry v. Blakely*, 216 S.C. 13, 18, 56 S.E.2d 581, 583 (1949).

Here, Homeowner does not argue that the sale price shocks the conscience. Rather, he asserts (1) the price of $181,000 is

---

1. Like an action to foreclose a mortgage, an action to foreclose a lien for the unpaid assessments of a homeowners' association is an action in equity. *Cf.* S.C. Code Ann. § 27–31–210(a) (2007) (providing for an action to foreclose a lien for unpaid condominium regime fees and allowing the action to be brought "in like manner as a mortgage of real property"); *Dockside Ass'n v. Detyens*, 294 S.C. 86, 88, 362 S.E.2d 874, 875 (1987) (interpreting section 27-31-210(a) to require the "treatment of assessment lien foreclosures as actions in equity").

inadequate because the fair market value of the property is $316,800 and (2) he did not know about the foreclosure hearing, the foreclosure judgment, or the judicial sale until the day after the sale. He maintains his lack of knowledge of these events constitutes excusable neglect. *See Wells Fargo,* 378 S.C. at 152 n.1, 662 S.E.2d at 426 n.1 (explaining a party seeking to set aside a judicial sale on the ground that the price at which the property was sold was merely inadequate, rather than shocking to the conscience, must show excusable neglect). Homeowner also implies that his health difficulties, including multiple hospitalizations, prevented him from responding to either the Association's imposition of assessments or this action.

Specifically, Homeowner argues he did not know this action had been referred to the master or that a hearing had been scheduled because the Order of Default and notice of the foreclosure hearing were mailed to his post office box. However, he does not indicate that the post office box was no longer a valid address or that he ever sent a change of address notification to the Association after having accepted service of the Summons and Complaint sent to his post office box.

Homeowner also asserts he was not properly served with notice of the foreclosure judgment or notice of the judicial sale. He points to the lack of an address for him on the Form 4 judgment. However, such an omission is not conclusive as to whether Homeowner was served. In this particular case, the Form 4 judgment lists the address for the Association's attorney, and all previous documents related to this action had been sent to Homeowner by the Association's attorney rather than the master.

██  Further, "[t]here is no requirement of law that parties to a suit for foreclosure be given personal notice of a judicial sale." *Peoples Fed. Sav. & Loan Ass'n v. Graham,* 291 S.C. 178, 182, 352 S.E.2d 511, 514 (Ct. App. 1987). *Graham* involved a mortgage foreclosure naming as defendants two judgment lienholders in addition to the mortgagors. *Id.* at 179, 352 S.E.2d at 512. The lienholders asserted prejudice from their lack of personal notice of the judicial sale "so they could attend and bid in the protection of their judgments." *Id.* at 182, 352 S.E.2d at 514. This court noted the lienholders did not

dispute that the legal requirements "for public notice of the judicial sale were met." *Id.* Likewise, in the present case, Homeowner does not dispute that public notice of the sale was properly given.

In any event, in his Memorandum in Support of Motion to Vacate Sale, Homeowner essentially admits that the foreclosure judgment and notice of the judicial sale were delivered to his post office box and that he simply did not check his post office box until the day after the sale: "[Homeowner] did not know that a foreclosure decree or a notice of sale had been issued until the day after the sale *when the notices were brought to his hospital room.*" (emphasis added). Homeowner's affidavit explains that the day after the sale, his property manager notified him that a stranger who claimed he was working for the "new owner" of the house changed the locks on the house. Homeowner contacted an assistant "who had periodically collected [his] mail at the post office," and the assistant "brought the unopened letters to [his] hospital room." Therefore, it is reasonable to infer that the foreclosure judgment and notice of sale were among the uncollected mail items sitting in Homeowner's post office box prior to the date of the sale.

Additionally, while we sympathize with Homeowner's health difficulties, he has not carried his burden of convincing this court that his health difficulties, by themselves, constituted excusable neglect. *See Crossland*, 408 S.C. at 452, 759 S.E.2d at 424 (citing one of the principles underlying the proper review of an equity case as "the imposition of a burden on an appellant to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court" (quoting *Lewis*, 392 S.C. at 391, 709 S.E.2d at 655)). Homeowner has admitted his disease allowed for periodic stable periods, and his affidavit indicates he was not hospitalized at the time he was served with the Summons and Complaint, the Order of Default, the Notice of Hearing, or the Master's Report and Judgment of Foreclosure and Sale. Further, although Homeowner was in the hospital on the day of the judicial sale, he does not indicate that he was unable to send an agent to the sale to bid for him. Moreover, in his brief and in his Memorandum in Support of Motion to Vacate Sale, Homeowner essentially admits he was able to instruct his

attorney to make a last-minute offer to the Association despite his medical condition. Therefore, the record as a whole indicates Homeowner had the ability to effectively participate in this action, either directly or through an agent, despite his health difficulties.

Based on the foregoing, Homeowner has failed to show that the master abused his discretion in declining to set aside the judicial sale. *See Wells Fargo*, 378 S.C. at 150, 662 S.E.2d at 425 ("[T]he determination of whether a judicial sale should be set aside is a matter left to the sound discretion of the trial court.").

## II.  Forfeiture and Unjust Enrichment

■ These issues are not preserved for appellate review because the master did not rule on them and Homeowner did not file a Rule 59(e) motion seeking rulings on these issues. *See West v. Newberry Elec. Co-op.*, 357 S.C. 537, 543, 593 S.E.2d 500, 503 (Ct. App. 2004) (holding an issue that was neither addressed by the trial court in the final order nor raised in a Rule 59(e), SCACR, motion was unpreserved for review by this court).

## III.  Timely Redemption

■ Homeowner maintains he had an equitable right to redeem his property up to the time Bidder complied with his bid and received a deed because the judicial sale was not complete until that time. Homeowner cites *Goethe v. Cleland*, 323 S.C. 50, 448 S.E.2d 574 (Ct. App. 1994) in support of his argument.

Homeowner's reliance on *Goethe* is misplaced. In *Goethe*, this court held that a judicial sale "was never completed and the proceedings were still subject to attack" because the Clerk of Court discovered an error in the foreclosure order prior to the successful bidder's compliance with the bid "and, consequently, never issued a deed to [the successful bidder]." *Id.* at 55, 448 S.E.2d at 576. In support of this proposition, the court cited section 15–39–870 of the South Carolina Code (2005), which states, "Upon the execution and delivery by the proper officer of the court of a deed for any property sold at a judicial sale ... the proceedings under which such sale is made shall

be deemed res judicata as to any and all bona fide purchasers for value without notice . . . ." *Id.*

Both section 15–39–870 and the *Goethe* opinion address the protection afforded bona fide purchasers for value who have no notice of any irregularities surrounding a judicial sale. *See Wooten v. Seanch*, 187 S.C. 219, 223, 196 S.E. 877, 878–79 (1938) (addressing a defect in a judicial sale by holding the precursor to section 15–39–870 protected a bona fide purchaser without notice of any irregularities in the sale even when the sale was not "confirmed by the order of the court"); *Bloody Point Prop. Owners Ass'n v. Ashton*, 410 S.C. 62, 66, 762 S.E.2d 729, 732 (Ct. App. 2014) ("The rationale for [section 15–39–870] is the well-established public policy of protecting good faith purchasers and upholding the finality of a judicial sale." (quoting *Robinson v. Estate of Harris*, 378 S.C. 140, 144–45, 662 S.E.2d 420, 422 (Ct. App. 2008), *aff'd*, 390 S.C. 272, 701 S.E.2d 740 (2010))).

Here, no one discovered any irregularities surrounding the judicial sale prior to issuance of the deed to Bidder. Proper notice of the proceedings was given. *See supra.* Further, the Association sought no deficiency judgment, and therefore, the bidding did not have to remain open for thirty days after the auction.[2] Moreover, no one alleged that the sale price shocked the conscience. *See supra.* Yet, Homeowner essentially maintains that his right of redemption endured between the public auction and the issuance of the deed to Bidder because an irregularity in the proceedings *could have been* discovered and a new sale *could have been* ordered during that period. We disagree.

The mere possibility of discovering an irregularity before issuance of the deed does not translate into a longer redemption period. An attack on the very validity of a judicial sale based on irregularities is decidedly different than a property owner's invocation of his right of redemption. The holding that the judicial sale in *Goethe* was never "completed" and the proceedings were still subject to "attack" because the deed

---

**2.** *See* S.C. Code Ann. § 15–39–760 (2005) ("The provisions of §§ 15–39–720 to 15–39–750 shall not apply to any suit brought for foreclosure if the complaint therein states that no personal or deficiency judgment is demanded and that any right to such judgment is expressly waived . . . .").

had not yet been issued should not be interpreted as a statement concerning the period during which the original owner may exercise his right of redemption.

Rather, South Carolina law concerning the right of redemption recognizes the judicial sale as the public auction itself, an event that is independent and separate from compliance with the bid and execution of the deed. Section 15–39–830 of the South Carolina Code (2005), states, "Upon a judicial sale being made and the terms complied with[,] the officer making the sale must execute a conveyance to the purchaser[,] which shall be effectual to pass the rights and interests adjudged to be sold." The plain language of this provision makes the judicial sale a prerequisite to the execution of the deed to the highest bidder: "Upon a judicial sale *being made* and the terms complied with[,] the officer making the sale must execute a conveyance to the purchaser. . . ." (emphasis added). The statute also makes the highest bidder's compliance with the bid a separate prerequisite to the deed's execution: "Upon a judicial sale being made *and* the terms complied with[,] the officer making the sale must execute a conveyance to the purchaser. . . ." (emphasis added).

■ Our case law is consistent with the language of section 15–39–830 in recognizing the judicial sale as an event that is independent and separate from compliance with the bid and execution of the deed. In explaining the limits on the power of the officer conducting the sale, our supreme court in *Cooke v. Pennington* designated the expiration of the redemption period as the moment a bona fide bid is made at the judicial sale:

> He may not do anything of himself, and must do all as he is directed by the law under which he acts. He may not, by any misconstruction of it, anticipate the time for sale, within which the owner of the property may prevent a sale of it by paying the demand against him and the expenses which may have been incurred from his not having done so before. This the law always presumes that the owner may do until a sale has been made. He may arrest the uplifted hammer of the auctioneer when the cry for sale is made, *if it be done before a bona fide bid has been made.*

15 S.C. 185, 193 (1881) (emphasis added) (quoting *Early v. Doe ex dem. Homans*, 57 U.S. 610, 617–18, 16 How. 610, 14 L.Ed.

1079 (1853)). Likewise, in *Union National Bank of Columbia v. Cook*, 110 S.C. 99, 117, 96 S.E. 484, 489 (1918), our supreme court designated the expiration of the redemption period as the occurrence of the judicial sale: "The [landowner] at any time *before the sale* herein recommended should have the right to redeem the said land from said liens and stop the sale of the said land. . . . " (emphasis added).

Here, Homeowner did not "arrest the uplifted hammer of the auctioneer when the cry for sale [was] made." *Cooke*, 15 S.C. at 193 (quoting *Early*, 57 U.S. at 617–18). Rather, "a bona fide bid [was] made" for the property and the sale was thus complete. *Id.* In other words, although Homeowner had an equitable interest in the property up to the date of the judicial sale,[3] when Bidder "became the successful bidder" and paid the required deposit, "he became the equitable owner" of the property. *See Parrott v. Dickson*, 151 S.C. 114, 122, 148 S.E. 704, 707 (1929) (holding that when the appellant "became the successful bidder" at a public auction "and paid in the required one-third of the purchase price, he became the equitable owner of [the disputed property]").

▬▬▬ This transfer by operation of law is not superseded by the conveyance language in section 15–39–830, i.e., "the officer making the sale must execute a conveyance to the purchaser[,] which shall be effectual to pass the rights and interests adjudged to be sold," because the statute effects a transfer of *legal* title to the successful bidder upon his compliance with the bid and the deed's execution. *See Levi v. Gardner*, 53 S.C. 24, 27–28, 30 S.E. 617, 619 (1898) (upholding a jury instruction indicating (1) the successful bidder's acquisition of an equitable title upon payment of the purchase money bid at a sheriff's sale and (2) the necessity of a deed to transfer legal title). Therefore, we find no merit in Homeowner's assertion that the conveyance language of section 15–39–830 signifies that the equitable right of redemption cannot expire until the deed is executed.

---

**3.** *Cf. Lewis v. Premium Inv. Corp.*, 351 S.C. 167, 173, 568 S.E.2d 361, 364 (2002) ("[T]he common law recognized an *equitable* right of redemption in the context of mortgages. . . . The mortgagor was given an equitable right to redeem the property irrespective of the terms of the mortgage and this right to redeem was considered *an equitable interest in the land.*" (emphases added)).

■■■■■ This transfer of the equitable interest to the successful bidder is in keeping with our precedent emphasizing the importance of stability in judicial sales. "Public interest and precedent dictate the fostering of the stability of judicial sales." *Appeal of Paslay*, 230 S.C. 55, 58, 94 S.E.2d 57, 58 (1956).

> The policy of the law is to sustain judicial sales when fairly made. Under our decisions, *when the auctioneer's hammer falls at such a sale, and the bid thereby accepted has been entered in the book, which the officer making the sale is required by law to keep, a valid contract is made.* The purchaser thereby makes himself a party to the cause, and may, except when there is fraud, misrepresentation, mistake, or other circumstances of unfairness in the sale, or a defect in the title, be compelled by the order of the court to perform his contract. *Justice to the bidder requires that, in the absence of any such circumstances, he should have the benefit of his contract.* It should be mutual. Any other course would make the rights of the purchasers at such sales so uncertain that it would tend to discourage bidding at them—a result so much more injurious in its consequences that it [outweighs] the possible injury resulting in a few isolated cases by a firm adherence to settled principles.

*Id.* at 62, 94 S.E.2d at 60 (emphases added) (quoting *Farrow v. Farrow*, 88 S.C. 333, 343, 70 S.E. 459, 461 (1911)).

Finally, our statutory and case law establishing the judicial sale as an event separate from compliance with the bid and execution of the deed is well illustrated in the April 19, 2011 Judgment of Foreclosure and Sale in the instant matter. In this judgment, the master ordered Homeowner to pay the amount of the judgment to the Association "on or before the date of sale" and clearly indicated the term "sale" to mean the public auction itself: "On default of payment at or before" the sale, the property "shall be *sold* ... at *public auction.*" (emphases added). We note Homeowner did not appeal the April 19, 2011 foreclosure judgment; therefore, its terms are now the law of the case. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) ("[A]n unappealed ruling, right or wrong, is the law of the case.").

Based on the foregoing, we hold that the period in which Homeowner was allowed to exercise his right of redemption expired upon the acceptance of the highest bid at the judicial sale.

## CONCLUSION

We affirm the master's denial of Homeowner's motion to vacate the judicial sale.

**AFFIRMED.**

MCDONALD and HILL, JJ., concur.