**VAN SENDEN et al. v. O'BRIEN et al.**
**No. 5387.**

Court of Appeals of District of Columbia.
Argued March 11, 1932.
Decided April 4, 1932.

Rehearing Denied April 23, 1932.

Webster Ballinger, of Washington, D. C., for appellants.

James Sherier, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellees are the daughters of one Irvin E. Jones, who formerly resided in Washington, D. C. The elder of them, Bessie, was born June 16, 1904. Her sister, Myrtle, was born April 19, 1908. On March 16, 1927, they instituted suit in their own behalf, and, by amendment, as administratrices of the estate of their father, who died in Philadelphia, October 12, 1923. The judge below who heard the case made certain findings of fact, which are in the record. The evidence was not certified up. A condensed statement of the facts found is about as follows:

Herman W. Van Senden obtained in 1916 a judgment in the municipal court against Irvin E. Jones and Ludwig H. Borner on a promissory note for $250, which he caused to be docketed in the Supreme Court of the District. About two years later a writ of fieri facias issued, as the result of which the marshal levied on three pieces of improved real estate in Washington City belonging to Jones. The marshal appointed two appraisers who estimated the total value of the property seized at $10,000. As Jones had only an undivided half interest in the parcel appraised at $8,000, the value as estimated, of his interest in the property was $6,000. The marshal advertised the property for sale in accordance with the appropriate statute, and at the subsequent sale Van Senden was the only bidder. On the piece of property in which Jones' interest was appraised at $4,000, he bid $200; on that in which his interest was appraised at $1,300, he bid $25; and on that in which his interest was appraised at $700, he bid $10. All three properties were knocked down to him for $235. The marshal executed a deed conveying to Van Senden all the right, title, interest, and estate of Jones in and to the three parcels, and Van Senden entered into possession of the property the latter part of July

or the first part of August, 1918. As the sale price did not fully satisfy the judgment and costs, Van Senden, on June 5, 1923, caused another writ of fieri facias to issue, under which the marshal seized the only remaining property of Jones, valued at about $550, and in the same manner this was put up and sold at public auction, and bought by Van Senden for $50, but after the bringing of this suit Van Senden voluntarily conveyed this last-named property to appellees, and it is conceded that this transaction has no further part in the issue. The three properties first mentioned were sold by Van Senden, several years before the suit was instituted, to different buyers for the aggregate amount of $6,790. The rents accruing between the date of the marshal's sale and the date of his sale were received by Van Senden.

The lower court found that after 1912 and until he left Washington some time in 1918, Jones drank intoxicating liquors to excess, and in the three years between 1915 and 1918 was arrested half a dozen times for drunkenness. In 1913 his wife, Lucy, filed a bill for divorce in the city of Washington, alleging cruelty and drunkenness. A decree awarding a limited divorce was passed and custody of the two minor children awarded to the mother, and an order entered directing Jones to pay alimony and maintenance in the sum of $50 a month. In June, 1918, a week or 10 days before the sale of Jones' property to Van Senden, Lucy applied for an order for the appointment of receivers of Jones' property for the purpose of collecting the rents and applying same in payment of alimony and maintenance then in default. In this proceeding no service was had upon Jones, but the lower court appointed receivers and ordered them to take control and management of the property. A day or two before this order, the sale occurred, and the receivers apparently found Van Senden in possession and therefore nothing on which the order would operate. Shortly before or about this time, Jones disappeared, ceased all communication with his wife and children, and was unheard of again until after his death in Philadelphia in 1923.

After Jones' death, his widow remarried, and, by the provisions of his will, appellees became entitled to all property of which he died seized. Van Senden died after the present suit was begun, and his administrators were substituted in his place and adopted his answer as their own.

On the 7th of February, 1919, Lucy Jones conveyed to Van Senden her dower interest

in the property which he acquired at the sale. Evidence of the circumstances under which this transaction occurred were objected to by appellants because of Van Senden's death, and were not allowed to be shown.

In this state of facts, the court below found, as a conclusion of law, that Van Senden had acquired the property fraudulently, and entered a money decree for the selling price of the property with interest, plus the rents with interest, less the $250 judgment, interest, and costs, and the $400 and interest paid to Lucy Jones on account of the conveyance of her dower rights. The court further found that appellees, having been infants during the transactions mentioned above and having brought the suit about a year after the elder and before the younger became of age, were not chargeable with laches.

From what has already been said, it will be seen at a glance that the effect of what was accomplished through the issue of the fieri facias and the sale of the property was to enable Van Senden, for a judgment amounting to $250 obtained against Jones and another, to secure to himself property of Jones' worth easily at the time $6,500. Such a result is of itself a stigma on the law, and in many of the states of the Union could not have happened because of statutory prohibitions. In Virginia, for instance, the lien of a judgment against real estate can only be enforced in a court of equity, and the real property itself may not be sold if the rents and profits within five years will be sufficient to satisfy the judgment—in Pennsylvania if within seven years. In Indiana, Kentucky, Louisiana, New Mexico, Ohio, and Oklahoma, the sale price must equal two-thirds the amount of the appraisement. In other states there is a definite period allowed for redemption, but in all some statutory protection against an unconscionable taking of property for debt. These, or other like provisions and safeguards, we think, are wise and salutary, and might well be made to apply in the District of Columbia.

In the case under consideration, the rents and profits would have discharged the entire judgment indebtedness in approximately half a year, or, if we accept the unchallenged statement of counsel made in the argument, the redemption offer made by the wife within a few months of the sale would have accomplished the same result, and in both cases the creditor would have got all his rights, and the innocent and helpless would not have suffered.

While it is true the lower court found that there was no active fraud on Van Senden's part, which we understand to mean that the sale was had in the ordinary way and after proper advertisement, it nevertheless found, and we think correctly, that the inadequacy of the sale price was so gross as to shock the conscience. Where this is the case, the invariable practice has been, on proper showing, to set the sale aside. The difficulty in the present case grows out of the delay in the application.

No principle is better established than that a court of equity will not be active in granting relief in a case in which a party has slept upon his rights, and ordinarily in order to invoke the aid of the court, conscience, good faith, and reasonable diligence must be shown. Pomeroy's Equity Jurisp. (4th Ed.) vol. 1, § 419; Hammond v. Hopkins, 143 U. S. 224, 250, 12 S. Ct. 418, 36 L. Ed. 134. And in Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738, Mr. Justice Brewer said that the application of the rule did not depend so much upon the number of years which had elapsed as upon a number of other circumstances, by which he meant that while the principle itself is uniform, its application depends necessarily upon the facts in each particular case. And so it may be stated as a general principle that, where the person who seeks equitable relief has had ample opportunity of asserting his rights and claims, and abundant occasion to do so, and has failed to do either, the doctrine of laches is applicable. See Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485.

We proceed, therefore, to inquire whether, under the facts in this case, appellees, or their father, through whom they claim, was guilty of such gross laches as to make it our duty to deny them relief.

When Van Senden's judgment was obtained in June, 1916, one of them was 8 years old and the other 12. Their father had abandoned them, and, instead of furnishing them support, was using the income of his estate to maintain himself in a more or less constant state of inebriety. Their mother had been obliged to obtain an interlocutory decree of divorce, and the court had ordered an allowance of $50 maintenance. In 1918, when the children were respectively 10 and 14 years of age, the maintenance allowance was in default, the mother and children in necessitous circumstances, and the father an absconder. It is a fair inference from the facts found that his departure occurred when the proceedings were begun by his wife to

sequester his rents in discharge of the order for maintenance. His attorney at least had notice of these proceedings, and we think it is fair to assume, in turn notified his client. From this we think the conclusion is inevitable that he left Washington believing that the income of $50 a month which he had habitually received from the rentals had been diverted to the support of his wife and family, and this is confirmed by the provisions of his will which, though made in 1916, he never changed, and by the terms of which he described himself as owner of the property involved in the suit. To assume also that he knew that his creditor for $250 had possessed himself of his property worth over $6,000 would be to conclude that he was utterly indifferent while all that stood between himself and poverty on the one hand, and his wife and children and the poorhouse on the other, had been taken by a stranger for less than 6 months' rentals would produce. Such a theory is so contrary to every rule of human experience that it ought not to be adopted.

Shortly after his death in 1923, his widow remarried, and his two daughters, to whom his rights in the property passed, were then 15 and 19 years of age, respectively. Four years later, after the elder became of age and the younger was still an infant, they brought suit to set aside the sale and to establish a trust ex maleficio and for an accounting and a money decree.

█ The court below saw and heard the witnesses, and reached the conclusion that the transaction out of which this property was acquired for this grossly inadequate sum could not be approved, and we see no good reason to reverse its conclusion. As was said by Chancellor Desaussure in Butler v. Haskell, 4 Desaus. (S. C.) 651, 697: "Wherever the court perceives that a sale of property has been made at a grossly inadequate price, such as would shock a correct mind, this inadequacy furnishes a strong, and in general a conclusive presumption, though there be no direct proof of fraud, that an undue advantage has been taken of the ignorance, the weakness, or the distress and necessity of the vendor." In Massachusetts the statute provides that property sold at judicial sale may be redeemed within a year and not after, but the Supreme Court, in Graffam v. Burgess, 117 U. S. 180, 6 S. Ct. 686, 29 L. Ed. 839, relieved against this statutory provision and permitted a later redemption in a case in many respects similar to this. In Kloepping v. Stellmacher, 21 N. J. Eq. 328, where there was a sheriff's sale of property worth $2,000 for $52, Chancellor Zabriskie relieved against the sale on the ground of ignorance, stupidity, and perversity of the owner, and on this subject said: "They [owners] lose by it all their property, and are ill-fitted to acquire more. They are such as this court should incline to protect, notwithstanding perverseness." Many cases of the same character may be found in the books, each, as we have seen, dependent upon its particular facts, but fundamentally grounded upon the principle that greed and overreaching equally with fraud will not and ought not to be countenanced by the courts, especially when practiced upon those whose ignorance or youth or inexperience makes them incapable of protecting themselves.

Here we have a case in which, on the one hand, a business man of experience has acquired, for less than the value of 6 months' rentals, property twenty-five times more valuable than the debt. He has used and enjoyed it and sold it, and had on hand when the suit was brought the proceeds of sale. To allow him to keep them and deprive two innocent female children, who from their youth and lack of knowledge and their dependent condition could not have known their rights or how to challenge the wrong done them, would be to countenance a transaction which, except that it was made under the forms of law, can not be palliated or excused.

As the decision turns upon the point we have discussed, we have not adverted to a number of other claims of error assigned on the appeal. Most of them relate to the alleged failure of proof to sustain the findings of fact, but, as the evidence is not contained in the record, it is impossible for us to say whether there is any ground for the assignments or not, but, even if the evidence were before us, we would not be disposed to disturb the findings of the lower court, unless it clearly appeared that that court had misapprehended the evidence; in other words, unless satisfied that the findings were clearly wrong. United States v. United Shoe Machinery Co., 247 U. S. 32, 41, 38 S. Ct. 473, 62 L. Ed. 968.

Another assignment is that the allegations of the bill do not sufficiently charge direct fraud on the part of the defendant, and also do not sufficiently show a reason or justification of nonaction on the part of plaintiffs or their father, but we think there is nothing in either of these points we have not already covered. It may be that such fraud as was charged was not precisely proved, but the

material facts were sufficiently charged and sufficiently proved, and these, as we have seen, were enough, and the reason for the delay appears to us sufficiently alleged and proved to justify us in approving the decision of the trial judge relieving against the lapse of time.

Affirmed.