Antonio **MUÑOZ BERMUDEZ, his wife Migdonia Grajales Suarez; Elberto Berdut–Teruel and his wife Nydia E. Nieves De Berdut, Plaintiffs,**

v.

**INDUSTRIAL SIDERURGICA, INC., Banco Central Corp., Puerto Rico Industrial Development Company, et al., Defendants.**

Civ. No. 86–0581 HL.

United States District Court,
D. Puerto Rico.

Oct. 22, 1987.

Wanda Rubianes, Asst. U.S. Atty., Hato Rey, P.R., J. Christopher Kohn, Civil Div., Washington, D.C., for plaintiffs.

Rafael A. Robles Díaz, Hato Rey, P.R., for defendants P.R. Indus. Development Corp. (PRIDCO).

José Raúl Cancio Bigas, Ortíz, Murias & Cancio, Hato Rey, P.R., for Indus. Siderurgica, Inc.

### OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiffs move for confirmation of a judicial sale pursuant to an order by this Court dated July 7, 1987 in order to satisfy the judgment entered in the above captioned case. Codefendant, Banco Central Corp. ("Banco Central"), moves for dismissal of execution of judgment and opposes confirmation of judicial sale, on the basis that this Court lacks subject matter jurisdiction. In plaintiffs' reply to motion in opposition, they move for economic sanctions against Banco Central.

This case was originally brought to this Court by the United States, acting on behalf of the Economic Development Administration, against defendants pursuant to 28 U.S.C. sect. 1345. The United States filed this claim for the collection of monies loaned to defendant, Industrial Siderúrgica, Inc. ("Insid"). Banco Central who, along with the United States and others, loaned Insid large sums of money, was also joined in this action.

On February 18, 1987, the United States, codefendants Insid and members of the García family entered into a settlement agreement. On February 20, 1987, the Court granted the United States' request for dismissal of the complaint against Banco Central and Puerto Rico Industrial Development. Judgment was entered on February 26, 1987. The interest of the United States in the above captioned case was acquired by Subastadora Panamericana, Inc. ("Subastadora") on June 19, 1987. On the same day, Subastadora reassigned the claim to the appearing parties. On July 7, 1987, we granted substitution of parties and execution of judgment.

### STAY OF EXECUTION

It is at this point that Banco Central moves for stay of execution proceedings on the basis of lack of subject matter jurisdiction. Banco Central argues that this Court lost subject matter jurisdiction when the United States transferred and assigned its interests to third parties. We disagree.

Federal subject matter jurisdiction is determined at the time the action was commenced. "Federal jurisdiction properly obtained at the outset of an action is generally unaffected by the joinder or substitution" of parties. *Federal Deposit Ins. Corp. v. Tisch,* 89 F.R.D. 446 (E.D.N.Y. 1981); *Jones v. Village of Proctorville, Ohio,* 303 F.2d 311 (6th Cir.1962). *See Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 1213–1214, 25 L.Ed.2d 442 (1970) (when an issue regarding the constitutionality of a state law became moot, the federal court did not lose jurisdiction over the pendent claim).

In *Federal Deposit Ins. Corp.,* 89 F.R.D. 446, federal jurisdiction was derived under

12 U.S.C. sect. 1819, which grants the FDIC the power to sue and be sued in district court. FDIC claimed that defendants breached their fiduciary duties to insolvent Franklin National Bank. During the lawsuit, FDIC agreed to assign to the trustee all rights, titles and interests in any and all claims which have been or might be made against said defendants. FDIC, however, retained a ten percent interest of any recovery in excess of trustee's legal expenses plus one million dollars. FDIC then sought to join the trustee, as a party plaintiff. Defendants, on the other hand, argued that in view of the assignment, the court had lost jurisdiction. The district court disagreed with defendants' contention on two grounds. First, the the joinder or substitution of a transferee *pendente lite* did not affect the court's jurisdiction since federal jurisdiction was properly obtained at the start of the action. *Id.* at 448–49. Second, the court reasoned that successors in an action originally brought by a federal agency may continue to litigate in federal court. *Id.* at 449, citing *Jones*, 303 F.2d at 313 and *Hood v. Bell*, 84 F.2d 136 (4th Cir.1936).

The Sixth Circuit in *Jones v. Village of Proctorville, Ohio*, 303 F.2d 311, reversed a district court's findings that it had lost jurisdiction when it had granted substitution of parties. In that case, the Reconstruction Finance Corporation ("RFC") brought a foreclosure proceedings in federal district court. Upon RFC dissolution, the United States became the owner of the bonds and was substituted as party plaintiff. The United States sold the bonds to Dr. Jones and the latter was substituted as party plaintiff. The Circuit Court found that jurisdiction did not disappear once that jurisdiction had been invoked properly by Dr. Jones' predecessors in interest. *Id.* at 313.

The issue of whether a federal court loses jurisdiction when there is a substitution of parties most frequently arises in diversity of citizenship cases. It is well established that a federal court does not

lose diversity jurisdiction which was founded at the commencement of the action although domiciliary of one of the parties has changed, substitution by a non-diverse person, *Harvey v. Mooney*, 526 F.2d 608 (7th Cir.1975), or the amount recovered fell below the $10,000. *Rosado v. Wyman*, 90 S.Ct. 1207; *Field v. Volkswagenwerk A.G.*, 626 F.2d 293 (3rd Cir.1980) (diversity is determined at the moment when the action was commenced); *Hoefferle Truck v. Divco Wayne Corp.*, 523 F.2d 543 (7th Cir.1975); *Mas v. Perry*, 489 F.2d 1396 (5th Cir.1974); *Kidd v. Hilton of San Juan, Inc.*, 251 F.Supp. 465 (D.C.P.R.1966).

█ In the case at hand, the original plaintiff, the United States had properly invoked jurisdiction under 28 U.S.C. sect. 1345[1] at the commencement of the action. The subsequent substitution of the United States by third parties did not in any way affect this Court's authority to adjudicate pending matters in this action. Moreover, it is within the power of the court to continue a case in its original posture when granting a motion for joinder or substitution under Fed.R.Civ.Proc. 25(c). *Federal Deposit Ins. Corp.*, 89 F.R.D. at 448. Thus, Banco Central's motion for dismissal of execution of judgment is denied.

## CONFIRMATION OF SALE

We now turn to the issue of whether to confirm the sale of Insid's real properties located in Cataño. Banco Central objects to confirmation on two grounds: 1) lack of subject matter jurisdiction and 2) the sale does not comply with 28 U.S.C. sect. 2002. Because the first ground has already been ruled upon, we address the Banco Central's second contention.

Under 28 U.S.C. sect. 2002, "a public sale of realty or interest therein under any order, judgment or decree of any (federal court) shall not be made without notice ..." Section 2002 requires a notice to be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general

---

1. Under 28 U.S.C. sect. 1345, the Congress vested in the district courts original jurisdiction of all civil actions, suits or proceedings commenced by the United States.

circulation in the county, state or federal judicial district where the realty is located.

 Plaintiffs, in this case, gave notice of the judicial sale for August 28, 1987 through a local daily newspaper, *El Nuevo Día*, on August 1, 11, 15, and 24, 1987. A second auction was conducted on September 4, 1987 after the first sale was declared deserted since no one made the minimum bid of $7.1 million stipulated for the first auction. A literal reading of Section 2002 would show that plaintiffs have failed to publish once a week for at least four weeks the notice of judicial sale. Nevertheless, this Court finds that plaintiffs substantially complied with Section 2002 which is directory in nature and that Banco Central was not prejudiced by the non-compliance.

Generally, the majority of jurisdictions agree that the notice of sale statute is directory in nature and does not render the sale void provided no loss or injury was sustained by the *objecting party*.[2] *See Godchaux v. Morris*, 121 F. 482, 486 (5th Cir.1903) (although the officer failed to follow the Court decree as to the disposition of the property, confirmation was not defeated because the objecting party did not prove loss or injury resulting from the non-compliance); *Plimton v. Mattekaunk Cabin*, 9 F.Supp. 288 (D.C.Conn.1934) (the sale was confirmed despite the fact that publication was four days short of the required month); *Nevada Nickel v. National Nickel*, 103 F. 391 (Circuit Nevada 1900) (the statute is intended for the benefit and protection of the defendant); *In re Burr Mfg. & Supply Co.*, 217 F. 16, 20 (2nd Cir.1914); *Read v. Elliott*, 94 F.2d 55 (4th Cir.1938) (especially where no prejudice was suffered

**2.** The effects of non-compliance on the notice of sale statute are discussed mostly by cases interpreting Section 849 of Title 28, the predecessor of Section 2002. The methods for publication of the notice are, however, identical in both statutes.

**3.** In comparing Commonwealth law with controlling federal law in the present case, it is interesting to note that local law requires "publication of notice of property on execution in three different public places and that said notices shall be posted at the collector's office(,) ... public school of the place where defendant has his residence, if it is known, *or in one of the*

by the objecting party, a minor departure from strict compliance of the notice statute should not warrant the setting aside of a sale).

Banco Central relies on *Westmoreland Brick Co. v. U.S. Malleable Iron Co.*, 16 F.2d 371 (6th Cir.1926). In that case, only two notices were published in the newspaper which obviously does not meet substantial compliance with the notice of sale statute. The court stated that "[t]his requirement is sufficiently mandatory ... *to render erroneous* any sale to which the statute is applicable and *which was not made in substantial compliance.*" *Id.* at 372. (Emphasis supplied.) From these remarks, it may be said that the Sixth Circuit is not entirely in disagreement with the other courts who have ruled on this issue. The opinion seems to indicate, had there been substantial compliance then the judicial sale would have been confirmed.

In the present case, plaintiffs substantially complied with Section 2002 and made reasonable efforts to assure publicity of the sale. First, they published four notices in a daily newspaper. Second, the notice of sale was also posted in eleven public places in the San Juan, Cataño and Bayamón areas.[3] Lastly, two written notices were given to all junior lien holders, including Banco Central, prior to the date of the judicial sale. Although two of the four notices were published in the same week rather than once a week, this minor technicality does not in our view make invalid the sale in this case. The purpose of the notice statute was not undermined by this manner of publication.

*newspapers of general circulation ... during two (2) weeks, and at least once a week.*" Puerto Rico Civ.Proc. of 1979, 32 L.P.R.A.App. III R. 51.8. (Emphasis supplied.) Under Puerto Rico's Mortgage Law of 1979, 30 L.P.R.A. sect. 2719, "... the marshall shall proceed to auction the mortgaged properties, advertising the auction at least twenty days in advance by inserting said edict in a newspaper of general circulation at least once a week, and not less than three times, starting from the first publication." Generally, Commonwealth law has found that two or three notices for at least once a week is sufficient notice for a sale of real property.

We further find that Banco Central was not prejudiced by the non-compliance. It was notified twice in writing of the judicial sale of August 28, 1987. The purpose of Section 2002 is to provide notice to defendants.[4] Banco Central was given adequate notice and chose not to attend neither the first nor the second auction. Consequently, plaintiff's motion requesting confirmation of judicial sale is granted.

ECONOMIC SANCTIONS

Plaintiffs' request for sanctions in the amount of $2,500 incurred in opposing Banco Central's request to stay execution of judgment is denied. Although Banco Central's contention had very little support, it was not totally frivolous.

WHEREFORE, codefendant Banco Central's motion to stay execution of judgment is DENIED.

Plaintiffs' motion requesting confirmation of judicial sale is GRANTED, and the Special Master is hereby ordered to execute the deed of sale.

Plaintiffs' request for sanctions is DENIED.

IT IS SO ORDERED.

---

4. It should be noted that Insid has not objected to the sale of its real estate property.