**Benjamin F. STEWARD, Appellant,**

v.

**Marc S. MOSKOWITZ,
et al., Appellees.**

Nos. 08–CV–1055, 08–CV–
1064, 08–CV–1392.

District of Columbia Court of Appeals.

Argued Jan. 12, 2010.
Decided Oct. 7, 2010.

---

Michael Brand, with whom Kenneth J. Loewinger, Washington, DC, and Patricia Millerioux were on the brief, for appellant.

Michael S. Steadman, Jr., Michael N. Russo, Jr., Annapolis, MD, and Marc S. Moskowitz, pro se, were on the brief, for appellees.

Before REID, BLACKBURNE–RIGBSY, and THOMPSON, Associate Judges.

REID, Associate Judge:

In a prior lawsuit appellee, Marc S. Moskowitz, sued appellant, Benjamin F. Steward, for failure to pay outstanding legal fees. The trial court entered a monetary judgment in favor of Mr. Moskowitz. When Mr. Steward failed to pay the judgment, Mr. Moskowitz sought to enforce it by moving against Mr. Steward's real property located at 1536 T Street, in the Northwest quadrant of the District of Columbia ("the Property").

In the instant case, Mr. Steward sued appellees, Mr. Moskowitz and 1536 T Street Associates, L.L.C. ("T Street Associates"), to quiet title to the Property and to prevent unjust enrichment. The trial court granted Mr. Moskowitz's and T Street Associates's summary judgment motions, and denied Mr. Steward's motion for summary judgment as well as his motion to file a second amended complaint.[1] The court also ordered the release of *lis pendens*.[2] For the reasons discussed below, we are constrained to reverse the trial court's grant of summary judgment in favor of Mr. Moskowitz and T Street Associates and we remand this case to the trial court with instructions to set aside the execution sale of the Property.[3]

## FACTUAL SUMMARY

The record reveals the following.[4] In 1989, Mr. Steward acquired the Property. Sometime thereafter he retained Mr. Moskowitz, an attorney, to represent him in other matters. Mr. Moskowitz eventually sued Mr. Steward for failure to pay incurred legal fees. On June 12, 2007, Mr. Moskowitz secured a money judgment of approximately $8,160.00, plus interest.[5] Mr. Steward did not appeal. Mr. Moskowitz sent Mr. Steward an e-mail on June 15, 2007, indicating that he expected payment of the judgment, prejudgment interest and costs "by certified funds only, within ten days." Mr. Moskowitz recorded his judgment in the District's land records on June

25, 2007. He sent another e-mail to Mr. Steward that same day, declaring that if he did not receive payment by June 28, he would "proceed to move forward to execute on the judgment without further delay."

On July 26, 2007, after Mr. Steward failed to pay the judgment, Mr. Moskowitz obtained a writ of fieri facias from the Superior Court of the District of Columbia. This writ commanded the United States Marshal to seize and sell the Property to the highest bidder at public auction, after publication of notice. On July 27, 2007, the Marshal posted to the Property a Public Notice of Attachment. This notice incorrectly stated that "the District Court of the United States for the Washington D.C. District of Columbia" issued the writ. But, the notice correctly referenced the Superior Court of the District of Columbia in its caption. Mr. Moskowitz sent another e-mail to Mr. Steward on August 13, 2007, stating that he would not "continue to allow [him] to avoid [his] obligation to pay the judgment entered against [him,]" and that he would "be contacting the U.S. Marshal soon to commence advertising attendant to the sale of the real property . . . and unless the sum stated is paid . . . [he would] run the risk of having the property sold."

The Marshal subsequently advertised the public auction in the *Washington Times*—on October 24, October 31, and

---

1. No. 08–CV–1055 (order of June 12, 2008), re-entered on July 16, 2008 (No. 08–CV–1064).

2. No. 08–CV–1392 (order of October 1, 2008).

3. This action renders moot the *lis pendens* appeal in No. 08–CV–1392.

4. On October 6, 2009, T Street Associates filed a D.C.App. R. 28(k) letter attaching the amended opinion and order of the Honorable Brook Hedge in a related case, *Steward As-*

socs., *L.L.C. v. Moskowitz, et al.*, No. CA6736 B–08 (Aug. 26, 2009). Our factual summary relies, in part, on the factual background section of that case's Amended Opinion and Order Granting Defendants' Motions for Judgment and Denying Plaintiff's Motion for Summary Judgment.

5. *Moskowitz v. Steward*, No. CA–8271–06 (June 12, 2007) (judgment entered following bench trial).

November 7, 2007. The advertisement read:

> By Virtue of Writ of Fieri Facias issued by the Superior Court for the District of Columbia, and to me directed, I will sell by public auction, to the highest bidder for CASH, in front of the United States Marshal Service, 500 Indiana Avenue, N.W., on Thursday, November 8, 2007 at 10:00 a.m., all of the right, title, claim[,] interest and estate at law and equity of Benjamin Steward, Case No. 06CA8271, in and to the following described real estate, in the District of Columbia to wit: Lot number 0098, in Square 0191, among the records of the Office of the Surveyor for the District of Columbia, known as 1536 T Street, N.W., Washington, D.C.
>
> TERMS OF SALE: A 10% deposit is required in cash or certified check payable to the U.S. Marshal's Service at time of sale, except that the judgment creditor shall not be required to have a deposit. Balance due in cash or certified check payable to the U.S. Marshal Service by 4:00 p.m., Tuesday, November 13, 2007.

A contact telephone number was listed "For Further Information." According to an affidavit signed by Geraldine Davis, an employee of the Office of the U.S. Marshal for the District of Columbia,

> The normal practice and procedure of [the] Office prior to a U.S. Marshal's sale under a writ of *fieri facias* is to obtain two appraisals of the property involved, to post a Notice of Attachment on the property involved and then to advertise the sale for once a week for three weeks in a newspaper of general circulation in the District of Columbia.

Ms. Davis asserted that her office "obtained two appraisals of the Property" and advertised the sale in the Washington Times "for once a week for three weeks in advance of the sale, which was consistent with [the Marshal's] standard practice for such sales."

The Marshal's auction occurred on November 8, 2007, as scheduled. There were three bidders at the auction. Mr. Moskowitz appeared as a representative of T Street Associates, and was the highest bidder at $90,000.00.[6] On the date required for full payment, a grantor for the Lorge Trust—the sole member of T Street Associates—tendered a cashier's check for $90,000.00, payable to the United States Marshal.[7] The Marshal executed the Property's deed from the Superior Court to T Street Associates. Mr. Steward then moved to stay the proceedings to enforce the judgment. After a hearing, the court denied his motion.[8]

Mr. Steward commenced the instant action on December 6, 2007, and he filed his first amended complaint about one week later. Since November 7, 2007, Mr. Moskowitz had represented the Lorge Trust in its efforts to create a limited liability company to purchase the Property. In his complaint, Mr. Steward acknowledged that

---

**6.** During a hearing on November 16, 2007, Mr. Steward said that the Property had an assessed value of $887,000.00, and he collected rents from tenants. In an affidavit, dated February 25, 2008, Mr. Steward stated that the Property was subject to two liens totaling around $465,000.00.

**7.** This was also the date of T Street Associates' establishment. T Street Associates appointed Mr. Moskowitz as "the Managing Member of the Company," but he had 0% of the ownership; the Lorge Trust was the 100% owner.

**8.** The Judge in Chambers expressly found that Mr. Steward did not suffer irreparable harm because, although he initially claimed that he would be put out on the street, he later admitted this was untrue since he did not live at the Property.

Mr. Moskowitz represented T Street Associates when he successfully bid on the Property, but he alleged that the Public Notice of Attachment regarding the auction of the Property erroneously listed the court from which the writ of fieri facias was issued. He claimed that Mr. Moskowitz executed and filed T Street Associates' Articles of Organization, and that T Street Associates "was not in existence until . . . 5 days *after* the [a]uction." Mr. Steward asserted that the Notice of Public Auction chilled potential bidders because it demanded that bidders settle within a much shorter time-frame than normal. He averred that D.C.Code § 15–314 requires freehold estates to be sold " 'after notice has been made in the manner provided by section 2002 of Title 28, United States Code,' " but that "the Notices of Public Auction [were] published only three . . . times over a span of . . . fifteen . . . days . . .—not for . . . over a span of four weeks as . . . required under 28 U.S.C. § 2002." And, Mr. Steward declared that if the sale remained in effect, T Street Associates would gain: "a windfall of approximately $450,000.00"; [9] "the benefit of [his] paying the current District of Columbia real property taxes and Property insurance through the first deed of trust"; and the rents collected from the Property's tenants.

Mr. Moskowitz and T Street Associates filed their motions for summary judgment on January 15, 2008; Mr. Steward opposed the motions on February 25, 2008. Mr. Steward lodged his cross-motion for summary judgment on March 27, 2008, and Mr. Moskowitz and T Street Associates respectively opposed the motion on April 8, and May 13, 2008.

On May 12, 2008, Mr. Steward lodged a motion for leave to file his Second Amended Complaint. This complaint added a number of factual allegations, for example: "The Public Notice of Attachment did not mention an execution sale of the Subject Property nor did it mention a date, time, or location of a sale of the Subject Property." In addition, he (1) modified the title of Count I from "Quiet Title" to "Quiet Title and To Set Aside Execution Sale" but left Count II titled as "Unjust Enrichment"; and (2) added a Count III— "Wrongful Execution," claiming that Mr. Moskowitz failed to follow the requirements of D.C.Code § 15–323 and § 16–555 [10] because he "did not exhaust all remedies prior to seeking a writ of *fieri facias* against the Subject Property. . . ." As indicated, the trial court denied his motion for leave to file the Second Amended Complaint.

### The Trial Court's Ruling

On May 30, 2008, the trial court granted Mr. Moskowitz's and T Street Associates' motions, but denied Mr. Steward's. The court determined that testimony and documents relied on by Mr. Moskowitz showed Mr. Steward knew of the final judgment against him in *Moskowitz v. Steward,*

---

9. Mr. Steward derived this figure by considering the Property's value and the two deeds of trust he previously recorded against it. His figure apparently is based on his "belie[f]" that the Property's value was $1,000,000.00.

10. D.C.Code § 15–323 provides:
 Real property or rent shall not be seized for a debt, as long as the present goods and chattels of the debtor are sufficient to pay it, and the debtor himself is ready to satisfy the debt.

D.C.Code § 16–555 specifies:
 *Where the attachment has been levied upon specific property, on the return by the marshal, judgment of condemnation of the property may be entered, and as much thereof as may be necessary to satisfy the plaintiff's judgment may be sold under a fieri facias. If the property was sold under interlocutory order of the court, the proceeds, or so much thereof as may be necessary, shall be applied to the plaintiff's claim by order of the court.*

CA8271–06 B (June 12, 2007). Mr. Steward's statements, and documents on which Mr. Moskowitz relied, established that Mr. Steward acknowledged receiving three e-mails Mr. Moskowitz sent him following the judgment; he did not open them because he "kn[e]w the information." Furthermore, the documents indicated that the " 'sale occurred to satisfy a Judgment which [Mr. Steward] repeatedly protested and failed to satisfy even after he was aware that [the] U.S. Marshal had left paper[s] with his tenants warning of imminent possession of [the P]roperty." Ultimately, the trial judge regarded "[t]he misidentification of the court in the Notice of Attachment … [as] *de minimis* " and declared:

> The applicable statute, 28 USC § 2002, is directory in nature, not mandatory. A failure to comply with the dictates of the statute, which amounts to a mere irregularity, does not act to void the sale, but makes the sale voidable. *Plimpton v. Mattakeunk Cabin Colony, Inc.,* 9 F.Supp. 288, 305 (D.Conn.1934). Substantial compliance with the notice procedures is sufficient. *Munoz Bermudez v. Industrial Siderurgica, Inc.,* 672 F.Supp. 57 (D.Puerto Rico 1987). In this instance, publication for three weeks instead of four weeks constitutes substantial compliance.

The trial court denied Mr. Steward's motion to file a second amended complaint after indicating that it had reviewed the proposed amended complaint and had applied the factors set forth in *Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n,* 641 A.2d 495, 501 (D.C.1994).[11] It noted that the litigation had commenced on December 6, 2007, that Mr. Steward had previously amended his complaint, that the deadline for discovery requests had closed six days prior to his moving to file a second amended complaint, and that summary judgment motions had been submitted prior to the submission of the proposed amended complaint. The court remarked that because it had already addressed and ruled on the issues that Mr. Steward presented in his proposed second amended complaint, it would have denied the motion even if it were not at this "late stage in the litigation."

## ANALYSIS

### *The Notice Issue*
#### The Parties' Arguments

Mr. Steward complains that despite the fact that all parties recognize D.C.Code § 15–314 as the controlling statute, the Property's sale was not conducted in accordance with that statute which provides in pertinent part: "Leasehold and freehold estates in land may be sold after notice has been made in the manner provided by section 2002 of Title 28, United States Code." Relying on the dictionary definitions for "has" and "been," he surmises that the phrase "has been" means that "notice *must* be made in accordance with 28 U.S.C. § 2002." But notice here was published only three times over a fifteen-day period, instead of "once a week for at least four weeks" as he claims that 28 U.S.C. § 2002 requires. Mr. Steward also invokes as support D.C.Code § 15–314's predecessor, D.C.Code § 15–214,[12] and he

---

**11.** These factors include: "(1) the number of requests to amend; (2) the length of time that the trial has been pending; (3) the presence of bad faith or dilatory reasons for the request; (4) the merit of the proffered amended pleading; and (5) any prejudice to the non-

moving party." *Johnson, supra,* 641 A.2d at 501.

**12.** D.C.Code § 15–214 (1961) provided:
Where not herein otherwise provided all property levied upon, except money, shall

asserts that 28 U.S.C. § 3203(g)(1) [A][i] (III)-(IV) [13] "must be considered."

Mr. Steward flatly rejects the trial court's ruling that "'substantial compliance with the notice procedures [of 28 U.S.C. § 2002 was] sufficient.'" He reasons that under *Early v. Doe*, 57 U.S. 610, 618, 16 How. 610, 14 L.Ed. 1079 (1854), "strict compliance with the notice statute is judicially required in the event of a tax sale within the District of Columbia, [and] equal protection mandates that the same rule appl[ies] to execution sales." He criticizes the court's reliance on *Munoz Bermudez, supra*, 672 F.Supp. 57, and *Plimpton, supra*, 9 F.Supp. at 305. With respect to *Munoz Bermudez*, he states, in part: "While substantial compliance with 28

---

be appraised by two sworn appraisers and sold at public auction for cash; personal property after ten days' notice by advertisement, and leasehold and freehold estate in land after a twenty days' previous notice by advertisement, containing a description sufficiently definite to be embodied in a conveyance of the title.

Mr. Steward believes that the "shall" in section 15–214 governed the notice provision for leasehold and freehold estate in land, and he appears to suggest that since the specific terms of the notice provision in that predecessor statute were mandatory, the specific terms of D.C.Code § 15–314 should also be read as mandatory.

**13.** 28 U.S.C. § 3203(g)(1) specifies, in part:

(g) Execution sale.
(1) General procedures. An execution sale under this section shall be conducted in a commercially reasonable manner—
(A) Sale of real property.
(i) In general.
(I) Except as provided in clause (ii), real property, or any interest therein, shall be sold, after the expiration of the 90–day period beginning on the date of levy under subsection (d), for cash at public auction at the courthouse of the county, parish, or city in which the greater part of the property is located or on the premises or some parcel thereof.
(II) The court may order the sale of any real property after the expiration of the 30–day period beginning on the date of levy under subsection (d) if the court determines that such property is likely to perish, waste, be destroyed, or otherwise substantially depreciate in value during the 90–day period beginning on the date of levy.
(III) The time and place of sale of real property, or any interest therein, under execution shall be advertised by the United States marshal, by publication of notice,

once a week for at least 3 weeks prior to the sale, in at least one newspaper of general circulation in the county or parish where the property is located. The first publication shall appear not less than 25 days preceding the day of sale. The notice shall contain a statement of the authority by which the sale is to be made, the time of levy, the time and place of sale, and a brief description of the property to be sold, sufficient to identify the property (such as a street address for urban property and the survey identification and location for rural property), but it shall not be necessary for the notice to contain field notes. Such property shall be open for inspection and appraisal, subject to the judgment debtor's reasonable objections, for a reasonable period before the day of sale.
(IV) The United States marshal shall serve written notice of public sale by personal delivery, or certified or registered mail, to each person whom the marshal has reasonable cause to believe, after a title search is conducted by the United States, has an interest in property under execution, including lienholders, co-owners, and tenants, at least 25 days before the day of sale, to the last known address of each such person.
. . .
(3) Sale procedures.
(A) Bidding requirements. A bidder at an execution sale of property, may be required by the United States marshal to make a cash deposit of as much as 20 percent of the sale price proposed before the bid is accepted.
(B) Resale of property. If the terms of the sale are not complied with by the successful bidder, the United States marshal shall proceed to sell the property again on the same day if there is sufficient time. If there is insufficient time, the marshal shall schedule and notice a subsequent sale of the property as provided in paragraphs (1) and (2).

U.S.C. § 2002 may be sufficient when providing notice to a judgment debtor of a *judicial* sale, the [trial] court failed to provide any authority to suggest that the same application applies to judgment debtors of an execution sale within the District of Columbia," and he argues that "noncompliance in *Munoz Bermudez,* if at all, was *de minimus*" (emphasis in original). He asserts that *Plimpton, supra,* "is not binding case law in the District of Columbia . . . as [it] has never been followed or cited in this jurisdiction for any propositions."

Professing that a "public notice of attachment does not constitute notice for purposes of an execution sale," Mr. Steward insists that the Notice of Attachment posted to his Property did not properly inform him of the Marshal's sale. He stresses that the Notice "did not provide the time or place of the sale, nor did it provide the manner or terms of the sale," and consequently it was merely a notice of " 'attachment' (i.e. seizure)" as governed by Title 16, and not a notice of execution as governed by Title 15. Furthermore, Mr. Moskowitz's e-mails following the judgment did not suffice as notice, since "[n]one . . . [articulated] the time, date, or location of the execution sale."

Mr. Moskowitz and T Street Associates counter that the United States Marshal has followed "the same 'practice and procedure' . . . in carrying out writs of fieri facias . . . in the District of Columbia for at least the last two decades." They also claim that the federal "[c]ourts called upon to address the 'notice requirements' of [28 U.S.C.] § 2002 have recognized that substantial compliance is the standard or test to be applied in determining whether to uphold a sale in aid of execution on a valid judgment, as the notice provisions are directory in nature." They note that we have " 'accord[ed] respectful consideration to the interpretation' of a federal statute by federal appellate courts that have been called upon to construe the same statute." *See District of Columbia v. Jerry M.,* 717 A.2d 866, 868–69 & n. 5 (D.C.1998).

Mr. Moskowitz and T Street Associates reject Mr. Steward's attempt to distinguish "within [28 U.S.C.] § 2002 . . . the standards applicable to a judicial sale and an execution sale." They avow that the cases Mr. Steward cites "involved judicial sales because, at least apart from execution sales authorized by D.C.Code § 15–314, section 2002 of U.S.C. 28 *only applies to* judicial sales, and not execution sales" (emphasis in original). Moreover, they dismiss Mr. Steward's reliance on D.C.Code § 15–314's predecessor, D.C.Code § 15–214, because Section 15–214 "set[s] forth a specific notice requirement of twenty days," whereas "the current act . . . [merely] refers to the provisions of 28 U.S.C. § 2002."

Contending that tax sale procedures are inapplicable, Mr. Moskowitz and T Street Associates suggest that if the legislature wished for the tax statute's [14] " 'strict compliance' standards" to apply to D.C.Code § 15–314, "the latter statute would presumably include the same mandates as the former." Characterizing as "dicta" *Ear-*

14. D.C.Code § 47–1301 (2001). Section 47–1301(a) provides, in part:

If the taxes due, together with the penalties and costs that may have accrued thereon, shall not be paid prior to the day fixed for sale, the property will be sold, under the direction of the Mayor of the District of Columbia, at public auction at the office of the said Collector of Taxes, commencing at least 3 weeks after the first publication of said notice and continuing on each following day, Saturdays, Sundays and legal holidays excepted, until all said delinquent property is sold; a description sufficient to identify the property shall be considered a proper description.

*ly's* "passing comments on the notice requirements for an execution sale," they urge that this "one hundred and fifty[-]six[-]year[-]old Supreme Court decision on the statutory requirements for a tax sale" fails to even contemplate 28 U.S.C. § 2002. *See Early, supra,* 57 U.S. 610. They point out that the case on which Mr. Steward relies to apply *Early* to the District of Columbia, *Potomac Building Corporation v. Karkenny,* 364 A.2d 809, 811 (D.C.1976), also "does not involve [D.C.Code] § 15–314, or 28 U.S.C. § 2002, or an execution sale."

Mr. Moskowitz and T Street Associates dismiss 28 U.S.C. § 3203(g) as inapplicable to a Marshal's sale in execution of a judgment held by a private citizen. They highlight that 28 U.S.C. § 3001 *et seq.* is the Federal Debt Collection Procedure Act, which provides " 'the exclusive civil procedures for the United States.' " 28 U.S.C. § 3001(a). And the instant matter involves not a court sale, "but an execution sale pursuant to a writ of fieri facias, governed by [Super. Ct. Civ.] Rule 69 and D.C.Code § 15–314."

In response, Mr. Steward argues that "it must be inferred that the intent of [28 U.S.C. § 2002] is to provide notice of the sale to the judgment debtor because it is the only statute which outlines the notice requirement." He further maintains that because of the significant difference between judicial and execution sales in the District of Columbia, the cases on which Mr. Moskowitz and T Street Associates rely are inapposite. Nonetheless, he notes that in all of these cases, the courts found "that mere irregularities may make a sale voidable if the objecting party is prejudiced." He avers that he "was clearly prejudiced as he was not provided with notice of the sale of his real property and did not attend [the sale, and he] . . . was further prejudiced by the extraordinarily low bid for the highly valuable piece of property." Finally, Mr. Steward contends that his " 'readiness' to satisfy the judgment was evidenced in the emergency hearing" held after the execution sale, during which he informed the court that he needed merely another two weeks to finish collecting the required money.

## Standard of Review

■ "We review orders granting summary judgment *de novo.*" *New Econ. Capital, L.L.C. v. New Mkts. Capital Grp.,* 881 A.2d 1087, 1094 (D.C.2005) (citation omitted). Consequently, we "consider the evidence in the light most favorable to the non-moving party, and conduct an independent review of the record." *Id.* (internal quotation marks and citation omitted). It is well-established that " '[s]ummary judgment is properly granted only if there are no genuine issues of material fact in dispute and if the moving party is entitled to judgment as a matter of law.' " *Id.* (quoting *Jack Baker, Inc. v. Office Space Dev. Corp.,* 664 A.2d 1236, 1240 (D.C. 1995)).

## Applicable Rules and Statutes and Discussion

Super. Ct. Civ. R. 69 concerning "Execution" states in relevant part:

Process to enforce a judgment for the payment of money shall be a writ of execution, unless the Court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the District of Columbia, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

. . .

Super. Ct. Civ. R. 69 (2010). This jurisdiction's Rule 69 is patterned on Fed.R.Civ.P. 69. MOORE'S FEDERAL PRACTICE (3d ed.) defines a "writ of execution" as "an order issued by a court, in the form of a final process designed to enforce a money judgment, directing an officer of the court to seize the property of a judgment debtor and transfer the proceeds over to the judgment creditor." *Id.,* Chapter 69, "Execution" (by Thomas E. Baker, with Updates by Joseph E. Spero), § 69.02. Super. Ct. Civ. R. 69 mandates that the execution procedure used "shall be in accordance with the practice and procedure of the District of Columbia . . ., except that any statute of the United States governs to the extent that it is applicable." And Fed. R.Civ.P. 69 states that the execution procedure "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent that it applies." Thus, the "court is supposed to apply [District] practices and procedures generally, but must follow any particular laws that apply." Moore, *supra,* § 69.03[1]. The requirement that a federal statute "governs to the extent that it is applicable" "means that specific federal statutes expressly governing execution preempt state statutes that specifically deal with execution procedure." *Id.* at 69.03[2].

The District's statutory scheme for the enforcement of judgments is set forth in Title 15 of the D.C.Code, "Judgments and Executions," Chapter 3, "Enforcement of Judgments and Decrees." D.C.Code § 15–301 (2001) states:

> As used in sections 15–302, 15–303, 15–305 to 15–307, 15–309, 15–317, and 15–318, "judgment" includes an unconditional decree for the payment of money, and sections 15–302 to 15–318 are applicable to such a decree.

D.C.Code § 15–311 provides, in pertinent part:

> A writ of fieri facias issued from the United States District Court for the District of Columbia or the Superior Court of the District of Columbia upon a judgment entered in such court may be levied on all legal leasehold and freehold estates of the debtor in land, but only after such judgment has been filed and recorded in the office of the Recorder of Deeds of the District of Columbia.

D.C.Code § 15–314 specifies:

> Where not herein otherwise provided, all property levied upon, except money, shall be appraised by two sworn appraisers and sold at public auction for cash. Personal property may be sold after ten days' notice by advertisement, containing a description sufficiently definite to be embodied in a conveyance of title. Leasehold and freehold estates in land may be sold after notice has been made in the manner provided by section 2002 of Title 28, in the United States Code.

And 28 U.S.C. § 2002 states:

> A public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated.

■ "In construing statutes, '[w]e look to the plain meaning of the statute first, construing words according to their ordinary meaning.'" *Washington Teachers' Union, Local # 6 v. District of Columbia Pub. Sch.,* 960 A.2d 1123, 1132 (D.C.2008) (alteration in original) (quoting *Boyle v. Giral,* 820 A.2d 561, 568 (D.C.2003)). However, "'[w]e must also be mindful that our

interpretation [of a statute] is not at variance with the policy of the legislation as a whole, requiring that we remain more faithful to the purpose than the word.' " *District of Columbia v. Fitzgerald*, 953 A.2d 288, 300 (D.C.2007) (alteration in original) (quoting *Jeffrey v. United States*, 892 A.2d 1122, 1128 (D.C.2006)); *see also Washington Teachers' Union, Local # 6*, *supra*, 960 A.2d at 1132 (quoting *Boyle*, *supra*, 820 A.2d at 568).

In accordance with D.C.Code § 15–311, and after recording his monetary judgment in the land records of the District, Mr. Moskowitz properly sought a writ of fieri facias in order to place a lien on the Property. There is no contention here that the court improperly issued the writ. The parties disagree, however, about whether 28 U.S.C. § 2002 is applicable, and whether the requirements under D.C.Code § 15–314, and 28 U.S.C. § 2002, if applicable, are mandatory.

■ Under the plain language of the District's enforcement scheme, D.C.Code § 15–301 makes clear that Chapter 3 of Title 15, including D.C.Code § 15–314, is properly applicable to a judgment involving "an unconditional decree for the payment of money," and that "sections 15–302 to 15–318 are applicable to such a decree."

Section 15–314 does not authorize notice (for the sale of a freehold estate) under "the practice and procedure of the District of Columbia, existing at the time the remedy is sought"; rather, it authorizes such notice only "in the manner provided by section 2002 of Title 28 in the D.C.Code." Moreover, although Super. Ct. Civ. R. 69 uses the language "shall be in accordance with the practice and procedure of the District of Columbia, existing at the time the remedy is sought," it contains after that clause the significant word "except"— "except that any statute of the United States governs to the extent that it is applicable. . . ." Since the only notice procedure referenced in § 15–314 is 28 U.S.C. § 2002, that federal statute is applicable to a property sale under § 15–314, and must be followed.

Whether there is a meaningful distinction between a "judicial sale" and an "execution sale" in the District of Columbia, and whether federal case law concludes that 28 U.S.C. § 2002 is applicable only to "judicial sales," [15] as Mr. Moskowitz and T Street Associates argue, is of no moment, since Congress intended that the reference to 28 U.S.C. § 2002 be inserted into D.C.Code § 15–314, which applies to an execution sale.[16] As both the Senate and

---

**15.** *See Weir v. United States*, 339 F.2d 82, 86 (8th Cir.1964) ("§§ 2001–2002, 28 U.S.C.A. have no application to execution sales").

**16.** Maryland law distinguishes a judicial sale from an execution sale—or a sheriff's or marshal's sale.

> A forced sale of real property can occur in three principal settings: through foreclosure of a mortgage or deed of trust; through a "judicial sale"; and through a sheriff's sale pursuant to a writ of execution or garnishment. The legal bases for these respective proceedings are quite different, and so are some of the proceedings attending them. In the case of a judicial sale, such as a tax sale or a sale in lieu of partition, and in the case of a foreclosure

sale conducted pursuant to a power contained in the mortgage, the court itself is regarded as the vendor, and the trustee conducting the sale is considered to be the court's agent.

*Goldberg v. Frick Electric Co., Inc.*, 363 Md. 683, 770 A.2d 182, 187–88 (2001). However,

> In making ordinary execution sales, simply by virtue of his office, the sheriff or marshal acts as the ministerial officer of the law, not as the organ of the court. He is not its instrumentor agent, as in judicial sales, and the court is not the vendor. His authority to sell rests on the law and on the writ, and does not, as in judicial sales, emanate from the court. The functions of the court terminate at the rendition of the judgment, except where confirmation of the sale is the

House committee reports accompanying the provision incorporating 28 U.S.C. § 2002 in D.C.Code § 15–314 stated:

> The provision that estates in land may be sold after notice has been made in the manner provided by section 2002 of Title 28, United States Code, is substituted for the provision that such estates may be sold after twenty days' notice by advertisement, containing a description sufficiently definite to be embodied in a conveyance of title.

CONGRESS OF THE UNITED STATES, REPORT FROM THE COMMITTEE ON THE JUDICIARY TO ACCOMPANY H.R. 4157, An Act to Enact Part II of the District of Columbia Code, Entitled "Judiciary and Judicial Procedure," Codifying the General and Permanent Laws Relating to the Judiciary and Judicial Procedure of the District of Columbia, S.Rep. No. 88–743, at 100 (1963); H.R.Rep. No. 88–377, at A92 (1963).

 Mr. Moskowitz and T Street Associates correctly observe that D.C.Code § 15–314 starts with the mandatory "shall" ("all property levied upon ... shall be appraised....") and ends with the permissive "may" ("freehold estates in land may be sold...."), suggesting, they contend, that while freehold estates are allowed to be sold after notice has been provided in the manner prescribed by 28 U.S.C. § 2002, execution sales do not have to follow 28 U.S.C. § 2002. We are unconvinced by this argument because if Congress had intended that other methods of notice could be used for execution sales of freehold estates, it could easily have inserted statutory language to that effect, or it could have included in the legislative history language allowing for other notice provisions. Given the critical due process

practice. The court does not direct what shall be levied or sold, or how the sale shall be made. The law is the officer's only guide.

requirement attending forced sales of land, we do not believe that Congress would have intended to permit an unspecified or general notice provision. As the Supreme Court said long ago:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.... The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected....

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted); *see also Jones v. Flowers,* 547 U.S. 220, 234, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) ("[B]efore forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.") (citations omitted). What constitutes adequate notice of an execution sale in the District has been expressed forth in statute. Thus, given the District's statutory provisions, set forth above, the plain meaning of those provisions, and the legislative history of § 15–314, we conclude that a sale of real property or a freehold estate in land based on an enforcement or execution of judgment action must follow the notice provision embodied in 28 U.S.C.

*Id.* at 188 (citations and internal quotation marks omitted).

§ 2002. The only question is whether compliance with 28 U.S.C. § 2002 must be strict or may be substantial.

To support their arguments regarding "strict" or "substantial" compliance with 28 U.S.C. § 2002, Mr. Moskowitz and T Street Associates, and Mr. Steward, generally rely on non-binding case law that is not directly on point. For example, Mr. Moskowitz and T Street Associates cite *Munoz Bermudez, supra,* a case in which plaintiffs published four notices (two in the same week) in a daily newspaper, but also posted the notice in eleven different places in three different areas; and in addition, gave notice to all junior lien holders before the date of the sale. 672 F.Supp. at 60. The trial court determined that the defendant was not prejudiced; plaintiffs had sent defendant two written notices regarding the sale. *Id.* at 61. *Plimpton, supra,* another case put forward by Mr. Moskowitz and T Street Associates, involved a purchaser's action, rather than that of a judgment debtor. The purchaser there, after two and one-half years, sought to escape from his contract to purchase receivership property by challenging the notice provision under 28 U.S.C. § 2002. Although there is language in *Plimpton* that 28 U.S.C. § 2002 is directory and not mandatory, the district court acknowledged principles from other cases that irregularities in giving notice of the sale could abort it: "[A] failure to observe the strict statutory provisions did not render the sale void but only voidable, and ... the defect is cured by confirmation after due notice to the defendant and without objection from him." 9 F.Supp. at 305.

In addition, Mr. Steward attempts to construct an argument based on words used in D.C.Code § 15–314—"after notice *has been* made in the manner provided by section 2002 of Title 28, in the United States Code" (emphasis added). He maintains that "has been" translates to "must" and that, consequently, the U.S. Marshal had to comply strictly with the requirement that "[a] public sale of [a freehold estate] ... shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in [the District of Columbia]."

We are not altogether persuaded by this textual interpretation, and neither the former D.C.Code § 15–214 nor 28 U.S.C. § 3203(g)(1)(A)(i)(III)-(IV) helps with respect to the interpretation of current § 15–314. D.C.Code § 15–214 contained different language which the Congress did not carry forth into the current provision—that is, mandatory language ("all property levied upon ... shall be ... sold", as well as a requirement of "twenty days' previous notice by advertisement"). Moreover, 28 U.S.C. § 3203(g), as Mr. Moskowitz and T Street Associates recognize, does not apply to the execution sale in this case; rather, that provision is applicable to the federal government as it attempts to collect on its judgments or debts.[17]

■ Two points convince us that we should apply a strict interpretation of D.C.Code § 15–314 and 28 U.S.C. § 2002 in this case. First, § 15–314 explicitly references 28 U.S.C. § 2002, which is expressed in mandatory terms: "A public sale of realty ... shall not be made without notice published once a week for at

---

**17.** *See* Russell G. Donaldson, Annotation, *Validity, Construction, and Application of Federal Debt Collection Procedures Act,* 119 A.L.R. Fed. 505 (2009 West Group), at *2 ("the Federal Debt Collection Procedures Act ... is the primary, and in many instances, the sole vehicle by which the United States Government and its agencies can utilize the authority of the judicial system for the collection of debts").

least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation...." Second, we consistently have required strict compliance with our statute governing tax sales of real property,[18] and although the tax sale statute is more developed or extensive than the execution sale statute,[19] we see no principled way of distinguishing between tax sales and execution sales with respect to a judgment debtor. Both are forced sales of an owner's property to satisfy an indebtedness, and both have due process implications for the owner. Indeed, in the case of execution sales, where the statutory provisions are not as well developed, due process considerations prompt us to require strict compliance with D.C.Code § 15–314 and 28 U.S.C. § 2002 particularly where, as here, the record leaves doubt as to whether Mr. Steward was notified of the time, place and date of the sale of his property.[20] In contrast to the requirement in 28 U.S.C. § 2002 of publication "once a week for at least four weeks prior to the sale," the Marshal published the notice on three days during a fourteen-day period. This deviation from the requirements of 28 U.S.C. § 2002 of course shortened the period of time for prospective bidders to

come forward, and hence, may have impacted the bid price. What the Supreme Court articulated in *Early v. Doe*,[21] a case involving the District's tax sale statute, is highly significant here: "There is a difference, it is true, in the strictness required in a tax sale, and that of a sale made under judgment and execution, but in both, the same rule applies as to the full notice of time which the law requires to be given for the sale."[22] Just as the *Early* Court construed the statutory words "for at least" to require "full notice of time ... for the sale," we hold in this case that D.C.Code § 15–314, which incorporates 28 U.S.C. § 2002 and which uses the same words— "for at least"—, required compliance with the full statutory period of time specified for public notice of an execution sale.

Even if we had determined that substantial compliance with D.C.Code § 15–314 and 28 U.S.C. § 2002, that is, three days for a fourteen-day period, was sufficient in this case, we would still conclude that the sale of Mr. Steward's property should be set aside, for two reasons. First, the sale should be set aside because there is no record evidence that Mr. Steward received actual notice of the date, time,

---

**18.** *See CCD–SAT, Inc. v. Pratt*, 972 A.2d 322 (D.C.2009) ("The District can effectuate a valid conveyance of property for nonpayment of real estate taxes only by strict compliance with the tax statute and regulations.") (citations and internal quotation marks omitted). The statutory provision governing notice of public auction for forced tax sales of property, D.C.Code § 47–1301 (2005 Repl.), is stated in mandatory language—"shall be advertised." *See also Bembery v. District of Columbia*, 852 A.2d 935, 941 (D.C.2004) (internal citations omitted) ("The District is required to provide notice that complies strictly with the requirements of applicable statutes and regulations, and that comports with the due process requirement that it be reasonably calculated to apprise interested parties of the imminent prospect of their loss of valuable property rights").

**19.** *See for example*, D.C.Code §§ 47–1302 and 47–1303.02, pertaining to notice to the record owner of real property to be sold for payment of delinquent taxes.

**20.** The record here indicates that Mr. Steward was aware that his property was up for sale due to his failure to pay the judgment awarded to Mr. Moskowitz, but neither the notice posted on his property, nor the e-mails that Mr. Moskowitz sent him included the time, place, and date of the sale.

**21.** 57 U.S. 610, 16 How. 610, 14 L.Ed. 1079 (1854).

**22.** 57 U.S. at 618.

and place of the sale of his property, his due process right to such notice hinged unfairly on the chance that he would see the advertisement in the Washington Times on at least one of three days— October 24, October 31, or November 7, 2007, during a fifteen-day period. Second, the sale price of $90,000.00 was grossly inadequate compared to the value of the Property. The Property had an assessed value of $887,000.00 and generated rents. When the outstanding liens of $465,000.00 are factored in, the Property still had a value of at least $422,000.00, excluding rents. Yet, it sold for less than one-third of its value, when the record shows that Mr. Steward had other assets which could have satisfied Mr. Moskowitz's judgment of $8,160.00, plus interest. Case law establishes that the combination of some unfairness or irregularity combined with a grossly inadequate sales price justify setting aside an execution sale.

In *Shipley v. Shamwell*,[23] an early District case involving an execution sale to satisfy a municipal court judgment, the appellate court set aside the sale because of "gross inadequacy of price" and the failure of the marshal "to state to prospective purchasers at the time of the sale the amount of the sworn appraisal."[24] Other courts have set aside an execution sale based on gross inadequacy of the sales price plus some evidence of unfairness or irregularity.[25] In short, even under a "substantial compliance" principle, in this case we would conclude that the unfairness of no written or actual notice to Mr. Steward of the date, time, and place of the sale of his property, and the grossly inadequate sales price combined to require the setting aside of the execution sale.

For the foregoing reasons, we are constrained to reverse the trial court's grant of summary judgment in favor of Mr. Moskowitz and T Street Associates, and to remand this case with instructions to set aside the execution sale of the Property.[26]

*So ordered.*

---

**23.** 41 App.D.C. 267 (1914), 1914 WL 21728, 1914 U.S.App. LEXIS 2173.

**24.** 41 App.D.C. at 274, 275, 1914 WL 21728 at 5, 1914 U.S.App. LEXIS 2173 at 13, 15; *see also Van Senden v. O'Brien*, 61 App.D.C. 137, 58 F.2d 689, 691 (1932) (affirming district court finding that "the inadequacy of the sale price was so gross as to shock the conscience" where execution sale price was $250.00 for property valued at $6,500.00).

**25.** *See Pisano v. Tupper*, 188 A.D.2d 991, 591 N.Y.S.2d 888, 889 (1992) (sales price of $5,000.00 for a farm worth $80,000.00 was "so grossly inadequate that it shocks the conscience of the court"); *Hogan v. Carter*, 431 So.2d 1160, 1163 (Ala.1983) ("Virtually all courts recognize that inadequacy of price, *in some degree*, combined with some form of other circumstances, especially those indica-tive of fraud or unfairness on the part of the purchaser, or mistake, does justify the setting aside of an execution sale.") (citation and internal quotation marks omitted) (emphasis in original); *Beneficial Mortgage Co. of North Carolina v. Peterson*, 163 N.C.App. 73, 592 S.E.2d 724, 727, 729 (2004) (trial court did not err in setting aside execution sale where property owner was not sent notice of the execution sale, did not receive actual notice, and the property valued at $215,000.00 was sold for $20,200.00 to satisfy a judgment of $9,546.30).

**26.** Given our disposition, we do not consider Mr. Steward's challenge to the trial court's denial of his motion to file a second amended complaint.